In the Matter of STATE OF NEW YORK (NEW YORK STATE BOARD OF EQUALIZATION AND ASSESSMENT AND NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION), Appellant, v TOWN OF THURMAN, Respondent. (And Four Other Related Proceedings.)

Third Department, November 5, 1992

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General,* Albany *(Daniel L. Smirlock* and *Nancy A. Spiegel* of counsel), for appellant.

*Hancock & Estabrook,* Syracuse *(William L. Allen, Jr.,* of counsel), for respondent.

## OPINION OF THE COURT

MERCURE, J.

In each year from 1986 through 1990, petitioner commenced a proceeding pursuant to RPTL article 7 challenging the assessment by respondent's Board of Assessment Review on more than 120 Adirondack Forest Preserve parcels containing approximately 26,000 acres located in the Town of Thurman, Warren County. A consolidated trial of all five proceedings was held, during which respondent sought to strike petitioner's 1986, 1987, 1988, 1989 and 1990 appraisal reports. Supreme Court, *inter alia,* granted respondent's motion to strike petitioner's 1986 and 1987 appraisal reports, dismissed the 1986, 1987 and 1990 petitions in orders entered April 2, 1991 and, after "cut[ting] the Town's assessment on the stumpage value in half", ordered specific assessments for tax years 1988 and 1989. Respondent moved for resettlement of the order involving the 1988 and 1989 proceedings. Supreme Court then vacated its earlier order with respect to tax years 1988 and 1989 and determined, in an order entered May 28, 1991, that the 1988 and 1989 stumpage values be fixed at "one half of the timber values as [they] were appraised by the petitioner in its appraisal reports". Respondent appeals from the order entered May 28, 1991. Petitioner appeals from the orders entered April 2, 1991 dismissing its 1986, 1987 and 1990 petitions.

The evidence at trial demonstrated that valuation of the parcels in question requires the measurement of three components, i.e., bare land, water frontage and timber (or "stumpage"). The present appeals concern only the parties' widely divergent appraisals of stumpage value for the years in question, as follows:

|      | Petitioner    | Respondent    |
|------|---------------|---------------|
| 1986 | $3,122,175    | $ 7,061,730   |
| 1987 | $3,204,502    | $ 8,735,354   |
| 1988 | $3,423,569    | $ 9,191,000   |
| 1989 | $3,822,429    | $ 9,762,496   |
| 1990 | $4,090,099    | $10,024,572   |

We note at the outset that "it is well settled that there is a presumption of validity of an assessment by the taxing authority and the burden is imposed on petitioner to show by substantial evidence that the assessments are excessive" *(Matter of Adirondack Mtn. Reserve v Board of Assessors,* 99 AD2d 600, 601, *affd* 64 NY2d 727). The presumption of validity disappears and may not be considered in weighing the evidence when the taxpayer presents sufficient evidence to make out a prima facie case that the assessment is erroneous *(Matter of General Motors Corp. v Assessor of Town of Massena,* 146 AD2d 851, 853, *lv denied* 74 NY2d 604). When the taxpayer's proof is inadequate, however, the presumption remains in effect *(supra).* Further, an appraisal report offered into evidence will not withstand a motion to strike unless it "contain[s] a statement of the method of appraisal relied on and the conclusions as to value reached by the expert, together with the facts, figures and calculations by which the conclusions were reached" (22 NYCRR 202.59 [g] [2]; *see, Matter of Orange & Rockland Utils. v Williams,* 113 AD2d 760, 762-763).

Petitioner's method of stumpage appraisal was explained at trial by Philip Hembt, a senior real estate appraiser for the State Board of Equalization and Assessment (hereinafter SBEA), who had primary responsibility for petitioner's timber appraisals. Petitioner began by taking an inventory of the forest land. The first step in the three-step process is a preliminary photo interpretation. The parcel boundaries are plotted on aerial photographs and divided into subparcels or "stands", which are contiguous groups of trees sufficiently uniform in species composition and age to form a distinct unit. Foresters make preliminary judgments about the characteristics of these stands on the basis of the photographs and then do a "field reconnaissance" in which they visit the parcels,

using the aerial photographs as maps, taking samples at multiple points within the stands to verify and adjust their initial judgments. As Hembt explained, at each sample point the foresters make judgments about the characteristics of a stand in terms of seven factors including, among others, forest type, timber volume, cut class, accessibility and ease of logging (see, 9 NYCRR 186-16.19). The appraisal also notes that gross volume is determined by using a device called a 10-factor prism to measure the "basal area" (i.e., cross-sectional area of each tree at 4½ feet above the ground) at each of the sample points. The forester then uses a chart to convert basal area to gross timber volume. After the reconnaissance, the foresters undertake a final photo interpretation, using the information about the stands they have visited to make judgments about and to categorize the stands identified on the aerial photographs they have not sampled.

Having obtained a forest inventory and established recoverable volumes, the appraiser must next develop current prices for standing timber. Hembt and his foresters obtained this timber price data by consulting lists published by sawmills, using a semiannual report published by the Department of Environmental Conservation and canvassing "an extensive statewide network of stumpage buyers and agents". These prices are used to produce a stumpage price schedule, which appears in the appraisal and indicates the value of each species per thousand board feet under various combinations of logging conditions (see, 9 NYCRR 186-16.18 [b] [1]). As the final step in the process, the stumpage schedule is brought to bear on the forest inventory. This is done by first determining the net volume per acre of each species found in every stand. Hembt did this by using the "Forest Stand Condition File", which is SBEA's computerized index of stable forest stand relationships. It indicates the merchantable volume in board feet of each species for a given gross volume and the percentage of each species that can be found on a given stand. These "species composition figures" have been determined for each possible combination of the seven forest characteristic variables. The interaction, via computer, of the forest stand condition file and the stumpage price schedule produces a "final stumpage schedule", which indicates a value per acre for any

type of stand. To arrive at the final value of each stand, Hembt employed the "generally accepted practice", required by SBEA regulation (see, 9 NYCRR 186-16.18 [b] [3]), of discounting all stumpage value by 50% and then multiplying by the acreage of the stand. A parcel's timber value is the sum of the value of each individual stand on that parcel.

When respondent presented its case, it offered the testimony of James Farrar, the forester who did the stumpage portion of respondent's appraisal. Farrar also began with aerial photographs and proceeded to a field reconnaissance based on sample plot points and essentially followed the same process as Hembt. Unlike Hembt, however, Farrar estimated net volume directly by examining particular trees at his various sample points and, thus, his determination of merchantable volume was subjective and not derived from established charts. Moreover, because Farrar is routinely involved with individual timber sales, he was able to use specific comparable sales to determine species value per thousand board feet.

We turn now to respondent's argument that petitioner's 1988 and 1989 appraisals failed to comply with the Uniform Rules governing appraisal reports. Respondent claims that because several exhibits introduced at trial were omitted from petitioner's appraisals, the appraisals improperly lack "the facts, figures and calculations by which the conclusions were reached" (22 NYCRR 202.59 [g] [2]) and, thus, the exhibits and testimony supporting petitioner's timber value conclusions should have been stricken. We agree. The appraisal reports in question contained only a tree species price list by board feet and a total timber value for each parcel. Petitioner did not disclose the calculation steps by which it reached each parcel's timber value. Hembt expressed clearly that to go from prices for any species to a timber value for any subparcel, one had to use the forest stand condition file as well as the 1988 or 1989 stumpage schedule. These were all omitted from the appraisals. Thus, the net volume of timber, the species percentage breakdown and petitioner's claimed merchantable percentage could not be discerned from the appraisal reports. Further, two sample calculations that were necessary to show the method by which the timber value conclusions were reached were not revealed prior to trial.

It is clear that virtually every fact, figure and calculation necessary for an understanding of the complex report and conclusion was absent from the report. Petitioner concedes that a great deal of data was in the SBEA computer and not

in the appraisal report, and petitioner's own witnesses admitted the absence from the report of facts, figures and calculations by which petitioner reached its timber value per parcel. We conclude that, in view of the crucial importance of the nature and extent of calculations and data concerning net volume of timber, species percentage breakdown and merchantability percentage, respondent was highly prejudiced in presenting its case, in cross-examination at trial and in meeting petitioner's data and method revealed only at trial, and that respondent's motion to strike should have been granted *(see, Matter of Orange & Rockland Utils. v Williams,* 113 AD2d 760, 762-763, *supra; see also, Matter of Johnson v Town of Haverstraw,* 133 AD2d 86; *Matter of Rusciano & Son Corp. v Roche,* 118 AD2d 861; *Matter of Algonquin Gas Transmission Co. v Williams,* 104 AD2d 803; *Matter of Resort HFA v Finance Admin.,* 81 AD2d 617).

Addressing petitioner's appeal and contrary to petitioner's assertion, it was the failure to produce a timber value witness to support the conclusory timber value figures rather than the absence of the basal area to volume conversion table that required Supreme Court to strike the 1986 and 1987 appraisals and dismiss the proceedings for those years. Petitioner failed to recall Hembt to testify regarding the calculations supporting the 1986 and 1987 reports' conclusions. Accordingly, petitioner failed to meet its burden of proof *(see,* 22 NYCRR 202.59 [g] [2]; [h]; *Richmond County Country Club v Finance Adm'r,* 173 AD2d 532, 533; *Matter of General Motors Corp. v Assessor of Town of Massena,* 146 AD2d 851, 853, *supra).* Moreover, the 1986 and 1987 appraisal reports, like the 1988 and 1989 appraisal reports, did not include the calculations upon which they were based and, thus, did not comply with the prescriptions of 22 NYCRR 202.59 (g) (2).

With respect to the 1990 proceeding, notwithstanding petitioner's claim that the parties had "agreed to trend" and that respondent had withdrawn its motion to strike the 1990 summary comparison, because the 1990 conclusion was trended from petitioner's inadequately supported 1988 and 1989 figures, the 1990 proceeding was properly dismissed.

As a final matter, petitioner's effort to excuse any failing of its appraisals by pointing to claimed similar problems with respondent's appraisals is unavailing. As noted, the burden of proving that the presumptively valid assessments were improper is on petitioner, as taxpayer, and respondent was not required to submit an appraisal for any of the years that

petitioner did not carry its burden of proof *(see, 50 Front St. Corp. v Dearborn,* 73 AD2d 1022, 1023).

LEVINE, J. P., MAHONEY, CASEY and HARVEY, JJ., concur.

Ordered that the orders entered April 2, 1991 are affirmed, with costs.

Ordered that the order entered May 28, 1991 is reversed, on the law, with costs, and the 1988 and 1989 petitions are dismissed.