■ In the Matter of CITY OF TROY, Appellant, v ANN M. KUSALA, as Assessor of the Town of Pittstown, et al., Respon-

dents. (And Five Other Related Proceedings.) [642 NYS2d 717] —Spain, J. Appeal from a judgment of the Supreme Court (Canfield, J.), entered April 3, 1995 in Rensselaer County, which, *inter alia*, dismissed petitioner's applications, in six proceedings pursuant to RPTL article 7, to reduce the 1988, 1989, 1990, 1991, 1993 and 1994 tax assessments for petitioner's reservoir property.

Petitioner owns a tract of approximately 2,800 acres of property, largely located in the Town of Pittstown, Rensselaer County, most of which is used as a reservoir for its municipal water supply. The property, known as the Tomhannock Reservoir (hereinafter the property), has a capacity to hold approximately 12 billion gallons of water; between 1,700 and 2,000 acres of the total acreage are flooded. The major improvement on the property consists of a dam which was built between 1902 and 1906. For tax assessment purposes, respondent Town of Pittstown assesses the property as five separate parcels. Petitioner commenced these consolidated RPTL article 7 proceedings against the Town and its assessor (hereinafter collectively referred to as respondents) to challenge, among others, the 1990, 1991, 1993 and 1994 assessments as being unequal, illegal and overvalued. For 1990 and 1991, the Town assessed the property to have a value of $6,989,500; for 1993 and 1994, the assessed value was $6,906,900.[1] For each year under review, petitioner claimed that the total assessed value of the property was overvalued by the Town by approximately $2.5 million to $3.7 million.

A consolidated nonjury trial of the tax certiorari proceedings was held in Supreme Court. Petitioner and respondents each used the "reproduction cost new less depreciation" method (hereinafter RCNLD method) to arrive at the full value of the property.[2] Petitioner's real estate appraiser testified that in his opinion, based on comparable sales, the property had a total

---

1. Petitioner also challenged the 1988, 1989 and 1992 assessments and the judgment appealed from specifically disposes of the 1988 and 1989 petitions. The 1992 petition was apparently disposed of previously. The parties stipulated that the results of the proceeding to challenge the 1993 assessment would determine petitioner's challenge to the 1994 assessment. The parties also stipulated to the equalization rates as follows: 1990—79.13%; 1991—54.08%; 1993—50.58%; 1995—51.68%.

2. Using this method, the value of the land is calculated using market data of comparable sales of similar property. The current costs to reproduce the improvements are separately estimated. The percentage of physical depreciation or functional obsolescence present in the existing improvements is then subtracted from the cost of reproducing the improvements to get a depreciated value of the improvements as of the taxable status date. The land value and the depreciated value of the improvements are added to get

land value of approximately $970,000 (2,800 acres × $350/ acre). The new cost of reproducing the reservoir improvements was calculated by petitioner as follows:

| Year | Cost-New Value |
|------|----------------|
| 1990 | $7,774,690 |
| 1991 | $8,124,346 |
| 1993 | $8,643,138 |

In the opinion of petitioner's experts, the reservoir improvements would have a total life of 150 years; the age of the improvements (apparently measured from 1906) was calculated for each year under review and divided by 150 to yield the depreciation and remaining economic life. Using these percentages, petitioner's experts calculated the depreciated value of the improvements and, adding in the land value of $970,000, they concluded that the full value of the property for the years under review to be as follows:

| Year | Depreciated Value | Full Value (Rounded) |
|------|-------------------|----------------------|
| 1990 | $3,369,032 | $4,339,000 |
| 1991 | $3,466,388 | $4,436,000 |
| 1993 | $3,572,497 | $4,542,000 |

In contrast, respondent's real estate appraiser valued the land and, using the same methodology as petitioner, respondent's engineer determined the cost of reproducing the reservoir improvements as follows:

| Year | Land | Cost-New Value |
|------|------|----------------|
| 1990 | $4,450,000 | $17,300,000 |
| 1991 | $5,100,000 | $17,500,000 |
| 1993 | $4,200,000 | $18,400,000 |

Using the depreciation and remaining economic life calculations, based upon their estimate of 300 years for the total life of improvements and adding in the respective land values, respondent's experts concluded that the full value of the property for the years under review to be as follows:

the total value of the property (see, *Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven*, 202 AD2d 32, *lv denied* 85 NY2d 809).

| Year | Depreciated Value | Full Value |
|------|-------------------|------------|
| 1990 | $7,929,000 | $12,379,000 |
| 1991 | $7,978,000 | $13,078,000 |
| 1993 | $8,295,000 | $12,495,000 |

Following the trial, Supreme Court determined, *inter alia*, for numerous reasons, that petitioner failed to meet its burden of demonstrating that the 1990, 1991 and 1993 assessments were excessive. A judgment was entered dismissing the petitions. Petitioner appeals.

We affirm. It is settled law that tax assessments enjoy a presumption of validity (*see, Farash v Smith*, 59 NY2d 952, 955; *Matter of Welch Foods v Town of Portland*, 187 AD2d 948). It is petitioner's burden to establish by substantial evidence that the property was overvalued (*see, Matter of Barnum v Srogi*, 54 NY2d 896, 899; *Matter of State of New York v Town of Thurman*, 183 AD2d 264, 266; *Matter of American Broadcasting Cos. v Tax Commn.*, 83 AD2d 502, *affd* 57 NY2d 792). If petitioner fails to meet its burden of demonstrating that the challenged assessments are excessive, it is of no avail to assert claimed deficiencies in respondents' appraisal (*see, Matter of State of New York v Town of Thurman, supra*, at 269). Here, the parties agreed that the highest and best use for the subject property would be as a reservoir. Petitioner's real estate appraiser relied upon 11 comparable sales in determining the value of the land. The parcels were located as follows: one in the Town of Pittstown, one partially located in Massachusetts, two in Herkimer County and the remainder in other parts of Rensselaer County. The evidence adduced at trial indicated that the comparable property located in the Town was not sold as the result of an arm's length transaction, but rather as the result of a long-standing agreement between neighboring farmers. Further, the cumulative adjustments to each comparable, i.e., the positive or negative adjustment made to each comparable to account for differences with the subject property, ranged from 30% to 135%. The adjustments were based upon, *inter alia*, the comparables' divergent topography from that of the property.

The record supports Supreme Court's determination that the comparable properties relied upon by petitioner were not similar enough to the subject property to yield an accurate comparison value. Unlike the property used by petitioner, comparables should be in close geographic proximity to the property being appraised (*see, Matter of General Elec. Co. v Town of*

*Salina*, 69 NY2d 730, 731). Further, petitioner's appraiser appropriately valued the property as if it was drained; however, the appraiser erred by improperly disregarding the use of the property as a reservoir and solely valuing it as if it was vacant recreational property; the comparables relied upon by petitioner have concededly different best uses which would be unsuitable to use as a reservoir (*see generally, City of Rochester v Assessor of Town of Conesus*, 136 AD2d 881). Finally, given the high adjustments, it was not unreasonable for Supreme Court to determine that the comparables were not reliable indicators of the property's value (*see, Matter of Xerox Corp. v Ross*, 71 AD2d 84, *lv denied* 49 NY2d 702).

We also find no merit in petitioner's contention that Supreme Court erred by rejecting its assertion that the existing reservoir improvements would have a total useful life of 150 years, the figure used by petitioner's experts to calculate depreciation. Depreciation for the purposes of the RCNLD method may consist of physical depreciation (physical deterioration), functional depreciation or economic obsolescence (*see generally, Matter of Long Is. Light. Co. v Assessor for Town of Brookhaven*, 202 AD2d 32, 42, *lv denied* 85 NY2d 809, *supra*). Functional depreciation is a " 'loss of utility and failure to function due to inadequacies of design and deficiencies in the property' " (*supra*, at 42, quoting *Matter of Putnam Theater Corp. v Gingold*, 16 AD2d 413, 417); economic obsolescence is the loss of value as a result of external conditions such as a declining location or neighborhood (*see, supra*, at 43).

Notwithstanding the fact that petitioner's experts determined that the reservoir improvements were 57% to 60% economically depreciated, they testified that the existing improvements did not suffer from any functional depreciation or economic obsolescence despite the fact that they were 85 years old. Petitioner's experts failed to make a distinction between physical depreciation, i.e., that the dam would "fall down" in the 151st year, and functional depreciation or economic obsolescence which would justify or support their high depreciation figures. In contrast, respondents' experts opined that the dam would likely have a total life of approximately 300 years from construction. Based on the age of the improvements and the estimated total life, respondents' experts calculated that the improvements were only 28% to 29% depreciated for the years at issue. Furthermore, petitioner's engineer conceded that the existing reservoir improvements

could have a useful life of 175 or 185 years and, possibly, even 300 years, based on the fact that they were 100% functional after 85 years.

Having concluded that petitioner failed to meet its initial burden (*see, Matter of Barnum v Srogi, supra; Matter of State of New York v Town of Thurman, supra; Matter of American Broadcasting Cos. v Tax Commn., supra*), we need not address petitioner's contention of claimed deficiencies in respondents' appraisal (*see, Matter of State of New York v Town of Thurman, supra*). Finally, although a few of petitioner's remaining contentions, including the assertion that Supreme Court erred in its determination that petitioner's engineer was not qualified to render an opinion regarding depreciation and in its finding that the engineer's testimony regarding the reproduction cost of the improvements constituted inadmissible hearsay, have merit, they do not alter our conclusion that Supreme Court properly determined that petitioner failed to demonstrate by substantial evidence that its property was overvalued.

Cardona, P. J., White, Casey and Peters, JJ., concur. Ordered that the judgment is affirmed, without costs.