OPINION OF THE COURT
James P. Dawson, J.
These three cases were brought pursuant to RPTL article 7 challenging the 1995, 1996, and 1997 assessments on certain real property located in the Town of Westport. That property consists of 26.7 acres of land and a single-story ranch house and outbuildings with over 2,600 feet of shoreline on the banks of Lake Champlain. The cases were consolidated for trial and heard on May 30 through May 31, 2000. The petitioner presented the appraisal and testimony of Mr. Frederick W. Drummond in support of his challenge to the 1995 assessment of the property and presented the appraisal and testimony of Mr. Thomas Fiero in support of his challenge to the 1996 and 1997 assessments. At the close of the petitioner’s proof, the respondents’ counsel moved to strike the petitioner’s appraisals arguing that they failed to comply with 22 NYCRR 202.59 (g) (2) since they did not contain the method of appraisal relied on by petitioner’s experts, the conclusions pertaining to value, and the facts, figures and calculations by which those conclusions were reached. Counsel for the respondents referenced the case of Matter of State of New York v Town of Thurman (183 AD2d 264 [3d Dept 1992]) in support of his oral motion. Counsel for petitioner opposed the motion and the court reserved decision. The respondents then rested without calling their appraiser or offering into evidence their appraisal reports which were filed and served pursuant to 22 NYCRR 202.59 (g) (1). The respondents thereafter renewed their motion to strike the petitioner’s appraisal and the court again reserved decision.
The court shall first address the respondents’ oral motion to strike the petitioner’s appraisals. The principal reason for the rule requiring disclosure of facts and source materials is to foster or further effective cross-examination. (Matter of White Plains Props. Corp. v Tax Assessor of City of White Plains, 58 AD2d 871, 874 [2d Dept 1977], affd 44 NY2d 971 [1978].) Mr. Drummond’s written appraisal does not have all of the demographic, geographic and photographic data often included in written appraisals. It is a bare bones appraisal at best. Indeed, Mr. Drummond testified that he relied on information pertaining to market forces received from real estate brokers whom he did not even name. Nonetheless, each expert relies *404 on his or her fund of knowledge in rendering an opinion. And not every defect in an appraisal will give rise to a successful motion to strike. Although Thurman (supra), cited by counsel for respondents, is cogent authority for striking an appraisal, that was a very different case from the one at bar since in Thurman, that Court found that “virtually every fact, figure and calculation necessary for an understanding of the complex report and conclusion was absent from the report.” (183 AD2d, at 268.) Similarly, the Court in Matter of Orange & Rockland Utils. v Williams (113 AD2d 760, 762 [2d Dept 1985]) held that a motion to strike the respondents’ appraisal should have been granted since there “virtually every fact, figure and calculation necessary for an understanding of the complex report and conclusions * * * was absent from the report.” In this case, Mr. Drummond’s testimony regarding market forces was not offered for the truth that the market was rising or declining. (Yee Sing Tung v Mon-Leang Mui, 260 AD2d 294 [1st Dept 1999] [out-of-court statements not admitted for the truth of their assertions but to explain the defendant’s actions]; cf., Spensieri v Lasky, 94 NY2d 231 [1999] [drug warning contained in PDR inadmissible, on its own, to show standard of care].) Rather, Mr. Drummond testified that his expert opinion was based on an assumption that the market was rising or declining during the period in which comparable properties sold. As to the Drummond appraisal, the court does not find that the respondents’ objections to its form and content warrant it being stricken. With regard to the Fiero report, it is a more complete appraisal in its length and in the greater amount of comparable sales set forth. Most of the respondents’ objections to the Fiero appraisal go to the weight to be accorded to it rather than to its form and content. Those objections are better addressed in determining its probative value. Accordingly, the respondents’ motions to strike the Drummond and Fiero appraisals are denied and it is so ordered.
The inquiry thus turns to whether the Drummond and Fiero reports constitute proof which will entitle Dr. Blumberg to a reduced assessment. The court is troubled by the state of the law in this area. The quagmire in which the courts seem to be caught concerns the traditional burden-shifting analysis implicated in all cases, article 7 proceedings being no exception. Ground zero of the confusion concerns the treatment given to the presumption that assessments are not excessive. This presumption of correctness is nothing more, however, than the typical burden of proof a petitioner has always had. (People ex *405 rel. Wallington Apts. v Miller, 288 NY 31, 33 [1942].) As such, where a petitioner presents acceptable proof at this initial stage, whatever term is used to identify that proof, the presumption disappears. (Id.) The waters become muddied, however, when labels are placed on that initial burden. It has been called “substantial evidence,”[1] “a minimal standard,” “less than ‘clear and convincing evidence,’ ” and “less than proof by a ‘preponderance of the evidence, overwhelming evidence or evidence beyond a reasonable doubt.’ ” (Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack, 92 NY2d 179, 188 [1998], supra.) The petitioner’s initial burden may also be satisfied, however, by presenting “sufficient evidence” to establish a “prima facie case” as in Matter of Gullo v Semon (265 AD2d 656, 657 [3d Dept 1999]) and Matter of Troy Realty Assocs. v Board of Assessors (227 AD2d 813, 814 [3d Dept 1996]), or by making out a “prima facie case to overcome the presumption of validity” as in Matter of Stonegate Family Holdings v Board of Assessors (222 AD2d 997, 998 [3d Dept 1995]). Prima facie is also a term used in Matter of Stock v Baumgarten (211 AD2d 1008 [3d Dept 1995]), Matter of Rusciano & Son Corp. v Roche (118 AD2d 861 [2d Dept 1986]), and Matter of Stoneleigh Parkway v Assessor of Town of Eastchester (73 AD2d 918 [2d Dept 1980]). Thus, prima facie proof needed to overcome the presumption of validity, which is the petitioner’s standard initial burden, seems to be the same as substantial evidence or sufficient evidence.
Whatever the label used for this initial burden, once it is satisfied, a court must determine “whether the documentary and testimonial evidence proffered by petitioner is based on ‘sound theory and objective data’ * * * rather than on mere *406 wishful thinking.” (Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack, 92 NY2d, supra, at 188.) The court must weigh the entire record to determine if the preponderance of evidence establishes that the property has been overvalued. (Matter of Wolf Lake v Board of Assessors, 271 AD2d 925 [3d Dept 2000].) Some decisions seemed to bring the “substantial evidence” term back into play at this stage in the proceedings where a final decision on the merits is required. A reading of Matter of Broadway-Saranac Lake Corp. v Board of Assessors (43 AD2d 649 [3d Dept 1973]) and Matter of Adirondack Mtn. Reserve v Board of Assessors (99 AD2d 600 [3d Dept], affd 64 NY2d 727 [1984]) would lead one to believe that the standard of proof after a complete review and analysis of the petitioner’s and respondent’s proof requires substantial evidence of overvaluation to entitle a petitioner to succeed. But FMC and the bulk of the cases cited above implicate substantial evidence as being a minimal standard: if that is truly what they mean, then municipalities would be forewarned to watch their pocketbooks since a petitioner would win if it provides a “decent” appraisal; the respondent’s proof would count for nothing. Perhaps the better approach is to disregard the terms “substantial evidence” and “sufficient evidence” and focus on the traditional burden-shifting framework applicable in the tax certiorari milieu as well as all other civil cases. RPTL article 7 cases are not fundamentally different from any other civil lawsuit and are even subject to summary judgment motions to eliminate meritless cases, rare as such motions are. (See, e.g., Matter of State of New York v Town of Hardenburgh, 273 AD2d 769 [3d Dept 2000]; Matter of Wolf Lake v Board of Assessors, 271 AD2d 925 [3d Dept 2000].)
In reviewing the respondents’ motion to strike the petitioner’s appraisal after the close of petitioner’s proof and in the face of respondents failing to call their own appraiser or offer into evidence their appraisal reports which were filed and served pursuant to 22 NYCRR 202.59 (g) (1), the court is called upon to determine whether the petitioner has satisfied his initial burden of proof and, if so, whether the weight of the evidence entitles him to ultimately succeed. This review requires a discussion of the appraisals submitted by Messrs. Drummond and Fiero. The troubling aspect of both these appraisals is that each appraiser chose not to value the whole property on the taxable status dates but instead created a theoretical parcel, valued that, and then, as Mr. Fiero did it, re-adjusted to value the “excess land” or, as Mr. Drummond did it, disregarded the *407 balance of the land. Both appraisers testified they found no good local comparables and did not go outside the locality for comparables. (Matter of Great Atl. & Pac. Tea Co. v Kiernan, 42 NY2d 236, 241-242 [1977].) Rather, they each carved out a part of the acreage with the buildings and found comparables to contrast with that theoretical parcel. Mr. Drummond set aside two acres with the buildings and associated lake frontage, while Mr. Fiero set off 10 acres with the buildings and associated shoreline. Mr. Drummond gave no value to the remaining acreage while Mr. Fiero adjusted the comparables to reflect what he termed “excess land.”[2] Neither appraiser testified as to the efforts undertaken, if any, to obtain truly comparable properties. In fact, Mr. Fiero set off a 10-acre theoretical parcel and then compared it with two- to four-acre parcels. Mr. Drummond was at least intellectually honest enough to create a two-acre theoretical parcel and compare it with other two-acre parcels. Notwithstanding the court’s dissatisfaction with the appraisals, however, it cannot be said that the appraisals constitute no more than wishful thinking. Moreover, the court has no evidence that the methodology employed by the appraisers is not sound theory. As the Court in FMC admonished, “[t]he ultimate strength, credibility or persuasiveness of petitioner’s arguments are not germane during this threshold inquiry.” (Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack, 92 NY2d, supra, at 188.) The court finds that the petitioner’s appraisals satisfy his initial burden.
That conclusion forces the inquiry of whether the petitioner’s satisfaction of this initial burden entitles him to recover absent proof by the respondents to support their assessment. In Matter of Gullo v Semon (265 AD2d 656 [3d Dept 1999], supra), the appellate Court had occasion to review a trial court’s decision on a very similar procedural footing as the matter before this court. In Gullo, the trial court denied respondent’s motion to strike the petitioner’s, appraisal and denied respondent’s motion to dismiss the petition for failure to demonstrate substantial evidence. As in this case, these motions were made at the close of petitioner’s case. The respondent rested after their motions were denied. Thereafter, the trial court reduced the as *408 sessments. The Appellate Division, not citing FMC (supra) which was decided six days earlier, wrote that: “[biased upon our review of the record, we are satisfied that petitioner presented sufficient evidence to establish a prima facie case that the assessment was erroneous and, therefore, overcame the presumption of validity.” (Id., at 657.) But “sufficient evidence” or the establishment of a “prima facie” case alone does not equal a preponderance of the evidence since the former terms only pertain, or should only pertain, to the petitioner’s initial burden. Nonetheless, where a respondent fails to present any proof in the face of that burden being met by a petitioner, the petitioner wins. (Id.) Here, therefore, the court finds that since the petitioner met his prima facie burden of establishing overvaluation of the assessments and there being no evidence to support the assessments, the petitions are granted and the assessments are reduced as follows:
1; The 1995 assessment is reduced to $264,500;
2. The 1996 assessment is reduced to $260,000; and
3. The 1997 assessment is reduced to $260,000.

. Substantial evidence in the context of an RPTL article 7 case should be the equivalent to substantial evidence in other contexts, such as CPLR article 78 substantial evidence. It is the “burden of proof necessary to support administrative determinations * * * as well as the evidentiary burden required to rebut certain presumptions” (Matter of Carriage House Motor Inn v City of Watertown, 136 AD2d 895, 896 [4th Dept] [Callahan, J. P., and Balio, J., dissenting], affd 72 NY2d 990 [1988]). The Court of Appeals held in Matter of FMC Corp. (Peroxygen Chems. Div.) v Unmack (92 NY2d 179, 188 [1998]) that in article 7 tax certiorari proceedings it is the minimum needed to rebut the respondent’s presumption of validity. But in Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes (92 NY2d 192,196 [1998]), decided the same day as FMC, the Court seemed to find that substantial evidence was something more than a minimal standard: “[s]ubstantial evidence is evidence grounded in objective data and sound theory * * * In the context of a proceeding to challenge a tax assessment, substantial evidence will most often consist of detailed, competent appraisal based on standard, accepted appraisal techniques and prepared by a qualified appraiser.”

. At-times, this court has heard real estate appraisers declaim against adjusting the “subject” to the “comparable,” insisting that good appraisal practice requires adjusting the “comparable” to the “subject.” It seems that the procedure employed here has a certain “adjusting the subject” quality to it. The respondents did not develop that argument, however, and the court will not take issue with that approach.