■ In the Matter of NIAGARA MOHAWK POWER CORPORATION, Appellant, v TOWN OF MOREAU ASSESSOR et al., Respondents. (Proceeding No. 1.) (And Three Other Related Proceedings.) In the Matter of ERIE BOULEVARD HYDROPOWER, L.P., Appellant, v TOWN OF MOREAU ASSESSOR et al., Respondents. (Proceeding No. 2.) (And Another Related Proceeding.) [847 NYS2d 756]—

Cardona, P.J. Appeal from a judgment of the Supreme Court (Williams, J.), entered October 31, 2006 in Saratoga County, which partially dismissed petitioners' applications, in six proceedings pursuant to RPTL article 7, to reduce the 1998, 1999, 2000 and 2001 tax assessments on certain parcels of real property owned by petitioners.

Petitioners commenced these proceedings pursuant to RPTL article 7, seeking to review and reduce assessments to their real property in the Town of Moreau, Saratoga County, for tax years 1998, 1999, 2000 and 2001. Petitioner Niagara Mohawk Power

Corporation filed petitions in 1998 and 1999 contesting the assessment of structures and equipment constituting the Spier Falls hydroelectric facility and various transmission and distribution properties. After the sale in 1999 of certain hydroelectric facilities from Niagara Mohawk to petitioner Erie Boulevard Hydropower, L.P., Niagara Mohawk filed petitions again in 2000 and 2001 contesting the assessments on its transmission and distribution properties. Erie also filed petitions, in those same years, to contest the assessments on properties comprising the Spier Falls, Sherman Island and Feeder Dam hydroelectric facilities. In August 2001, the parties stipulated to a joint trial and, in October 2002, stipulated to the tax years at issue, the land acreage of the real property for all the parcels and their assessed values and the equalization rates.

The matters were tried before a Referee, who issued a report in May 2006 finding that petitioners had submitted substantial evidence to overcome the presumption of the validity of the tax assessments. However, as relevant herein, the Referee determined that petitioners failed to demonstrate by a preponderance of the evidence that their properties had been overvalued. The Referee rejected petitioners' appraisals finding their use of straight-line depreciation unreliable because petitioners' experts (1) erred in calculating average service lives (hereinafter ASLs) for the properties, (2) used an "arbitrary" 5% residual value for assets still in use beyond their ASLs, and (3) employed a negative 5% salvage value predicated on an unexplained formulation. Said report was confirmed by Supreme Court in November 2006 and petitioners' petitions were dismissed.[1] This appeal ensued.[2]

Having rebutted the presumption that the property tax assessments by the town respondents were valid, petitioners then had the burden of demonstrating overvaluation by a preponderance of the evidence (*see Matter of NYCO Mins., Inc. v Town of Lewis*, 42 AD3d 841, 843 [2007]; *Matter of United Parcel Serv. v*

---

**1.** Although dismissing the majority of petitioners' claims, Supreme Court confirmed that part of the Referee's order that found that petitioners had demonstrated that certain of their properties had ceased to exist, were nonoperational or had been abandoned and, accordingly, lowered the assessments on said properties. Those determinations are not at issue here.

**2.** To the extent that respondents contend that the notice of appeal with respect to Niagara Mohawk is defective, we find that any error was an inadvertent omission and, in the absence of any prejudice to respondents, the notice of appeal is deemed an appeal taken by both petitioners (*see* CPLR 2001; *Matter of Tagliaferri v Weiler*, 1 NY3d 605, 606 [2004]; *Broughton v Dona*, 63 AD2d 1101, 1101 [1978], *appeals dismissed* 46 NY2d 1013, 1074 [1979], 47 NY2d 709 [1979]).

*Assessor of Town of Colonie,* 42 AD3d 835, 837 [2007]). Petitioners first contend that they met their burden because the Referee, who wholly disregarded the town respondents' appraisal as unreliable, was required to find in petitioners' favor. Notably, in reaching a decision, a referee has the discretion to reject an appraisal even when uncontroverted (*see Matter of Erie Blvd. Hydropower, L.P. v Town of Ephratah Bd. of Assessors,* 9 AD3d 540, 542 [2004]; *Matter of Saratoga Harness Racing v Williams,* 256 AD2d 663, 665 [1998], *lv denied* 93 NY2d 803 [1999]; *Matter of Blue Circle v Schermerhorn,* 235 AD2d 771, 773 [1997]) and such determination "is entitled to great weight" (*Loughran v Cruickshank,* 8 AD3d 799, 800 [2004]). The fact that the town respondents' appraisal had been struck by the Referee did not prevent the Referee, or Supreme Court, from also disregarding petitioners' appraisal.

Petitioners contend, alternatively, that Supreme Court erred in rejecting their methodology. At trial, petitioners elicited testimony from several experts, including Paul Williams, a senior project manager for Kleinschmidt Energy & Water Resources Consultants, and Mark Rodriguez, a managing partner at MV Valuation Consulting, and introduced their reports. In assessing the various properties, as relevant here, petitioners' experts employed the "reproduction cost new less depreciation" method. After computing the "reproduction cost new," the results of which are not in dispute, said cost was then depreciated, using the straight-line method, by dividing the actual life of each asset by the ASL to arrive at a percentage "good" for the asset, which was then multiplied by the reproduction cost new to arrive at an assessed value.

While petitioners correctly assert that straight-line depreciation has been considered appropriate when well-founded and supported by the evidence, such method must be applied after a review of pertinent information such as regional and national statistics, analysis by engineers based upon personal observation and, particularly, service lives reported by utilities (*see Matter of Niagara Mohawk Power Corp. v City of Cohoes Bd. of Assessors,* 280 AD2d 724, 727-728 [2001], *lv denied* 96 NY2d 719 [2001]; *Matter of Tenneco, Inc.-Tennessee Gas Pipeline Div. v Town of Cazenovia,* 104 AD2d 511, 513 [1984]). However, such method is deficient when the ASLs used in the calculations do not take into account the "remaining lives" of assets, particularly when the result is that the estimated service lives are shorter than the actual age of functioning assets, resulting in the assignment of no value to property that remains operable after its projected retirement date (*see Matter of City of Troy v*

*Kusala*, 227 AD2d 736, 740-741 [1996], *lv denied* 89 NY2d 801 [1996]; *see also Matter of Niagara Mohawk Power Corp. v Town of Marcy*, 256 AD2d 1155, 1156 [1998], *lv denied* 688 NYS2d 372 [1999]; *Niagara Mohawk Power Corp. v Town of Moreau*, Sup Ct, Saratoga County, June 18, 1999, Williams, J., slip op at 14). As such, a utility's own assessment of its particular assets is an indispensable source of data for computing ASLs for the purpose of calculating depreciation (*see Matter of Niagara Mohawk Power Corp. v Town of Bethlehem Assessor*, 225 AD2d 841, 844 [1996]; *Niagara Mohawk Power Corp. v Town of Moreau*, slip op at 14).

In calculating service lives for the hydroelectric facilities, Williams testified that Kleinschmidt used research based on various industry publications, experience in the consulting industry, personal observations, review of construction drawings and records and discussions with operations personnel, but did not consider or rely on calculations by Niagara Mohawk itself and was unaware of its estimates regarding the mortality of its equipment. Moreover, Kleinschmidt did not take into consideration major rehabilitation work on the Sherman Island or Spier Falls facilities. Despite these shortcomings, Rodriguez testified repeatedly, and MV Valuation's report shows, that it relied exclusively on Kleinschmidt's opinion on service lives as the basis for the determination of ASLs. This misplaced reliance is underscored by the fact that Williams, on numerous occasions, stated that it was his understanding that ASL was a calculation that was going to be addressed by the appraisers, and not Kleinschmidt, for the purposes of quantifying physical depreciation. Petitioners' methodology therefore resulted in ASLs that varied drastically from those reported by Niagara Mohawk, which were 30% to 48% higher across the board than those used by MV Valuations. For these reasons, we find that the ASLs used by MV Valuations were not supported by the evidence and, as such, rendered its straight-line depreciation calculations flawed (*see Matter of Niagara Mohawk Power Corp. v City of Cohoes Bd. of Assessors*, 280 AD2d at 727-728; *Matter of City of Troy v Kusala*, 227 AD2d at 740-741).

We also find problematic petitioners' calculations with regard to both residual value and negative net salvage value. Petitioners' experts used a depreciation floor of 5% good, but demonstrated no basis for arriving at the use of that percentage. MV Valuation's report stated that the 5% residual value was ''[b]ased on our appraisal judgment and experience'' and ''conversations with Kleinschmidt,'' but provided no empirical basis for selecting that figure. The town respondents' expert, in

contrast, opined at trial that the proper depreciation floor of these particular assets was 20%. Likewise, petitioners assigned a negative 5% net salvage value across the board to all assets, providing no empirical basis for doing so. In stark contrast, Niagara Mohawk's own reported salvage factors ranged from negative 25% to positive 10%, and the town respondents' expert opined that, based in part upon Niagara Mohawk's projections, he estimated varying net salvage values from negative 25% to zero.

While residual value and negative net salvage value are appropriate tools to employ when calculating depreciation, such values must not be arbitrary and should be calculated by independently determining factors for each asset being valued (*see Matter of Niagara Mohawk Power Corp. v City of Cohoes Bd. of Assessors*, 280 AD2d at 728; *Matter of Niagara Mohawk Power Corp. v Town of Bethlehem Assessor*, 225 AD2d at 844; *see also Matter of Niagara Mohawk Power Corp. v Town of Marcy*, 256 AD2d at 1156; *Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 254 AD2d 681, 682-683 [1998]; *Niagara Mohawk Power Corp. v Town of Moreau*, slip op 16-18). For the foregoing reasons, we agree with Supreme Court's finding that petitioners failed to demonstrate overvaluation by a preponderance of the evidence (*see Matter of Erie Blvd. Hydropower, L.P. v Town of Ephratah Bd. of Assessors*, 9 AD3d at 542; *Matter of Niagara Mohawk Power Corp. v City of Cohoes Bd. of Assessors*, 280 AD2d at 726).

As for petitioners' contention that the Referee, and thus Supreme Court, improperly relied on facts not in the record, we find that, while the Referee's report referenced certain facts concerning prior litigation between two of the parties involved here, the Referee's purpose was to show that the prior litigation was factually similar to the current proceedings and, thus, the same rule of law should apply. The Referee cited ample facts from the current dispute to support his conclusions.

We have considered the parties' remaining contentions and find them to be without merit.

Mercure, Crew III, Carpinello and Lahtinen, JJ., concur. Ordered that the judgment is affirmed, without costs.

