■ In the Matter of WILHELMINA DUPONT ROSS, Appellant, v TOWN OF SANTA CLARA et al., Respondents. (And Nine Other Related Proceedings.) [698 NYS2d 90] —Spain, J. Appeals from

two orders of the Supreme Court (Demarest, J.), entered September 21, 1998 in Franklin County, which dismissed petitioner's applications, in 10 proceedings pursuant to RPTL article 7, to review real property tax assessments imposed on petitioner's property.

From 1990 through 1995 petitioner and later the trust bearing her name (hereinafter collectively referred to as petitioner) were the owners of 27,139 acres of land situated within the Adirondack Park in respondent Town of Waverly (12,955 acres) and respondent Town of Santa Clara (14,184 acres) in Franklin County. This tract of land, sometimes referred to as "Brandon Park" or "Ross Park", consists primarily of wooded wilderness areas typical of the Adirondack region and contains a number of water resources including ponds, streams and a stretch of the St. Regis River approximately 10 miles long. The property, a private nature preserve used by petitioner's family for recreation, contains a number of structures to facilitate its recreational use, including main residences, hunting and/or fishing cabins, tenant and/or employee houses, a fish hatchery, a fish laboratory and a sugar house, as well as numerous watch cabins along the perimeter of the property to prevent public access. The entire parcel is regulated under the rules of the Adirondack Park Agency (hereinafter APA) and is situated in an area classified as "resource management", which is the strictest classification under APA zoning and/or development guidelines (*see*, 9 NYCRR 570.3 [jj]; *see also*, Executive Law § 805 [3] [g]).

In 1978, petitioner deeded a conservation easement to The Nature Conservancy to insure that the entire tract would "be maintained in its present state as a natural and scenic area" and not be subject to "commercial development or exploitation". To that end, the easement contained a number of restrictions to which the property was thereafter subject, including, *inter alia*, restrictions on development and general prohibitions against activity which would change its character, especially the parcel's "critical biological feature[s]". The instrument granting the easement also reserved substantial rights in petitioner, the grantor, including, *inter alia*, the right to exclude the public from all portions of the land, the right to timber "subject to appropriate harvesting guidelines", all mineral rights, the right to construct, replace and repair structures throughout the property and to construct 10 new residences on the property, including accompanying outbuild-

ings, and the right to convey or devise said property.* Notably, as a result of the conservation easement, petitioner claimed a charitable contribution income tax deduction of $1,180,000 which was taken over a three-year period from 1978 through 1980.

Petitioner brought proceedings, later consolidated, against the respondent Towns pursuant to RPTL 702 (1) primarily contesting as erroneously high the tax assessments on the property for various tax years during 1990 to 1996. The parties, as well as Supreme Court, recognized that the central issue was the effect of the 1978 conservation easement upon the value of petitioner's parcel of land and its concomitant effect on the assessments, if any. Testimony and appraisals were submitted by all parties.

While noting that petitioner had made out a prima facie case of an overassessment for some of the tax years in question, Supreme Court found that petitioner's appraiser failed to account for the "many rights retained by [petitioner] in granting this particular easement" and erroneously based his appraisal upon the assumption that "any conservation easement necessarily diminishes the value of the land". The court also found that petitioner's appraiser improperly considered the land largely in terms of its *potential* uses rather than its *current* use, and that he was generally less familiar with relevant APA land regulations than was respondents' appraiser. The court found respondents' appraiser "more credible in that he used comparable sales of large wilderness tracts and was much more familiar with the real estate market in the Adirondacks * * * [and] demonstrated a detailed knowledge of the [APA] regulations" which relate to the potential permitted development of the property. Supreme Court reduced the assessments for some of the tax years in question, but otherwise dismissed the proceedings due to petitioner's failure to prove further overassessment. Petitioner now appeals.

We affirm. The core infirmity in petitioner's appraisal is that it failed to abide by the principle that when real property is assessed for tax purposes "[t]he valuation of [the] property is determined by its state as of the taxable date, and may not be assessed on the basis of some future contemplated use" (*Matter of General Elec. Co. v Macejka*, 117 AD2d 896, 897; see, *Matter of Allied Corp. v Town of Camillus*, 80 NY2d 351, 360; *Matter of Adirondack Mtn. Reserve v Board of Assessors*, 99 AD2d 600,

---

* The instrument provided that no activity which alters or damages a critical biological feature may be conducted without the written consent of The Nature Conservancy.

601, *affd* 64 NY2d 727; *see also*, 98 NY Jur 2d, Taxation and Assessment, § 313, at 423). "[S]peculation and remote possibilities may not be considered in arriving at the market value of property for tax assessment purposes" (*Matter of Weingarten v Town of Ossining*, 85 AD2d 697, 698).

Here, notwithstanding petitioner's contentions that Supreme Court's determination of the parcel's "highest best use" was incorrect, the court's consideration of the effect of the easement on the property's value properly focused on the present use of the property as opposed to its speculative potential uses. Respondents' appraiser properly valued the property as it was presently utilized, as a single integrated parcel used as a family "wilderness estate", albeit subject to the conservation easement. Contrary to petitioner's contention, respondents' valuation—consistent with the APA guidelines—took into account the "zoning and reasonable developmental potential of [the] unimproved land" (*id.*, at 698), which the court reasonably accepted.

Petitioner's contention that the conservation easement reduces the value of the property is belied by the record. Initially, a review of the easement reveals that petitioner parted with very little of the "bundle of rights" associated with ownership of this property, indeed reserving substantial rights, a factor for which Supreme Court correctly found petitioner's appraiser had failed to accurately account. Furthermore, the testimony and appraisal of respondents' appraiser established that the limitations on the land were, in large part, merely redundant to restrictions that APA development guidelines already placed on the property and, as such, they did not reduce the value of the property. Given the strictness of the APA regulations, and the restrictions on placing structures within a certain distance of the St. Regis River (½ mile) due to its designation as a "scenic river" by the APA (*see*, 6 NYCRR 666.13), any further development of the land was unlikely even if the land were not subject to the conservation easement. As Supreme Court noted, petitioner's appraisal neglected to account for these restrictions already burdening petitioner's property. Thus, respondents' appraisal established that the conservation easement detracted little, if any, from the apparent use that has always been made of petitioner's property (*see*, *Matter of Adirondack Mtn. Reserve v Board of Assessors*, 99 AD2d 600, *supra*).

We reject petitioner's contentions that respondents' appraisal is deficient because the comparable sales did not have the same "highest and best use" as the subject property and that there

was no evidence to support the increase in value from 1990 through 1996 as reflected in respondents' appraisal. Notably, respondents' and petitioner's appraisers utilized one of the same tracts of property as a comparable sale. Testimony at trial also revealed that some of the parcels utilized by petitioner's appraiser were subsequently resold for substantially higher amounts—although, as Supreme Court noted, not factored into that appraisal—indicating a rise in market value of like properties. Supreme Court properly considered these sales in determining to credit respondents' appraisal as the more credible one (*see, Matter of FMC Corp. v Unmack*, 92 NY2d 179, 189).

We note that respondents' appraiser appeared to base his sales comparison valuation primarily upon four large tracts of land which, while not identical to the subject parcel, were sufficiently similar to the subject parcel in size and characteristics " 'to serve as a guide to the market value of the [subject property], notwithstanding differences between these comparables and [petitioner's] property' " (*id.*, at 189, quoting *Matter of General Elec. Co. v Town of Salina*, 69 NY2d 730, 732; *see*, Lee & LeForestier, Review and Reduction of Real Property Assessments in New York § 1.04, at 15-18 [3d ed]). Of course, "[t]he determination of market value is essentially a factual matter" (*Matter of General Elec. Co. v Town of Salina, supra*, at 732). A review of the record supports Supreme Court's acceptance of the conclusion of respondents' appraiser that the conservation easement did not reduce, for tax assessment purposes, the value of petitioner's property (*see, Matter of Adirondack Mtn. Reserve v Board of Assessors*, 99 AD2d 600, *supra*), as well as the court's acceptance of the values contained within his report.

Cardona, P. J., Crew III, Graffeo and Mugglin, JJ., concur. Ordered that the orders are affirmed, without costs.