■ In the Matter of GENERAL ELECTRIC COMPANY, Appellant-Respondent, v ASSESSOR OF THE TOWN OF ROTTERDAM et al., Respondents-Appellants, and SCHALMONT CENTRAL SCHOOL DISTRICT, Respondent. (And Another Related Proceeding.) [863 NYS2d 121]—

Mercure, J. Cross appeals from a judgment of the Supreme Court (Reilly, Jr., J.), entered April 27, 2007 in Schenectady County, which partially granted petitioner's applications, in two proceedings pursuant to RPTL article 7, to reduce the 2003 and 2004 tax assessments on certain parcels of real property owned by petitioner.

Petitioner commenced these proceedings pursuant to RPTL article 7, seeking to review and reduce assessments to its real property in the Town of Rotterdam, Schenectady County, for tax years 2003 and 2004. The subject property, a roughly 325-acre parcel that is improved by a complex of 43 buildings covering approximately 1.9 million square feet, has been owned by petitioner for nearly a century. It is adjacent to an additional parcel in the City of Schenectady, Schenectady County, that contains 19 buildings, and was used during the tax years at issue for research, development, manufacture and marketing of electric turbine generators, steam turbines and gas turbines. The complex consists of space allocated to heavy manufacturing, office, research and warehousing. Of note are four buildings—Building 273 (the steam turbine/generator plant),[1] Building 281 (the spin test facility), Building 262 (the gas turbine test and development facility) and Building 263 (the steam turbine and generator development laboratory)—which comprise 75% of the total building area of the complex. In addition to the buildings, the property is improved by railroad service, including 17,000 linear feet of rail; roads and parking areas; pedestrian walks; high pressure steam and water lines; vacuum/condensate return pipes; sanitary and storm sewers; low pressure steam, gas, compressed air, telephone and fiber optic lines; a superheated steam plant and steam tunnels; an electrical substation; and a wastewater treatment plant. It is undisputed that petitioner made capital expenditures of approximately $59,000,000 on the subject property from 1999 through 2003, spending $49,000,000 on Building 273 alone.

The property was assessed in 2003 and 2004 at $5,450,539. Prior to trial, the parties stipulated to the fair market value of the land and the equalization rates for the years in question. During trial, petitioner submitted a report prepared by appraiser John Coyle that relied upon the sales comparison approach to arrive at a market value for the subject property of $30,850,000. In contrast, the town respondents proffered a report by Pamela Brodowski that, after setting forth 29 sales of large manufacturing and warehouse distribution facilities that

---

1. Building 273 alone contains 1,167,634 square feet, the equivalent of 24 football fields. It has a high bay area of 81 feet that is, along with a 60-foot high bay and other high bays, in excess of other heavy industrial facilities. All are constructed with craneways that support 67 overhead cranes, including 11 that range from 100 to 500 tons in capacity. The cranes are used in the fabrication and repair of custom generators and turbines, which are placed in 45-foot-deep stacker pits supported by eight-foot foundations for manufacturing operations. The floor load capacity of the building itself is six times the norm of 250 pounds per square foot for heavy industrial buildings.

sold between 2000 and 2005, concluded that the sales comparison approach is not a viable method by which to value the subject property. Rather, Brodowski relied upon the reproduction cost new less depreciation (hereinafter RCNLD) approach[2] in estimating the market value of the property to be $249,000,000 for 2003 and $251,000,000 for 2004. Supreme Court concluded that petitioner submitted substantial evidence to overcome the presumption of validity carried by the town respondents' property valuation (*see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179, 187-188 [1998]), but rejected petitioner's appraisals after finding that the properties used in its sales comparison approach were not sufficiently similar to the subject property. Relying largely on the RCNLD analysis submitted by the town respondents, with a significant adjustment to the figure used for depreciation, the court calculated the total value of the property to be $126,400,000 in 2003 and $129,000,000 in 2004, reduced from $128,550,000 and $142,684,000, respectively.[3] Petitioner and the town respondents now cross-appeal.

Inasmuch as petitioner successfully overcame the presumption of validity carried by the town respondents' assessments, it "was required to show, by a preponderance of the evidence, that its property was overvalued" (*Matter of Norton Co. v Assessor of City of Watervliet*, 3 AD3d 760, 761 [2004]; *see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d at 188; *Matter of Niagara Mohawk Power Corp. v Town of Moreau Assessor*, 46 AD3d 1147, 1148 [2007], *lv denied* 10 NY3d 708 [2008]). In determining whether this burden has been met, "the court 'must weigh the entire record, including evidence of claimed deficiencies in the assessment' " of the particular property (*Matter of NYCO Mins. v Town of Lewis*, 296 AD2d 748, 749 [2002], *lv dismissed and denied* 99 NY2d 576 [2003], quoting *Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d at 188; *see Matter of City of Troy v Town of Pittstown*, 306 AD2d 718, 720 [2003], *lv denied* 1 NY3d 505 [2003]). Notably, valuation essentially presents a factual question, "and the courts have considerable discretion in reviewing the relevant evidence as to

2. Pursuant to this method, "[t]he present-day cost of reproducing the property's improvements is separately calculated, from which is subtracted the percentage of physical depreciation or functional obsolescence attributable to the existing structures as of the valuation date. The RCNLD value is the sum of the land value and depreciated value of the improvements" (*Matter of Lehigh Portland Cement Co. v Assessor of Town of Catskill*, 263 AD2d 558, 559 [1999] [citations omitted]).

3. We note that for tax assessment purposes, petitioner's property was valued at $114,748,189 in 2001 and at $120,854,523 in 2002.

the specific property before them" (*Matter of Consolidated Edison Co. of N.Y., Inc. v City of New York*, 8 NY3d 591, 597 [2007]; *see Matter of General Elec. Co. v Town of Salina*, 69 NY2d 730, 732 [1986]). Thus, on appeal, we "defer to Supreme Court's decision 'unless such finding is based upon [an] erroneous theory of law or [an] erroneous ruling in the admission or exclusion of evidence, or unless it appears that the court . . . has failed to give to conflicting evidence the relative weight which it should have and thus has arrived at a value which is excessive or inadequate' " (*Matter of City of Troy v Town of Pittstown*, 306 AD2d at 720, quoting *Matter of City of New York*, 284 NY 493, 497 [1940]; *accord Matter of Erie Blvd. Hydropower, L.P. v Town of Ephratah Bd. of Assessors*, 9 AD3d 540, 541-542 [2004]).

Petitioner primarily argues that Supreme Court erred as a matter of law in relying on the RCNLD method to value its large industrial complex, and additionally failed to give adequate weight to its comparable sales approach. As petitioner correctly asserts, the comparable sales method is the preferred method for valuing large industrial complexes for assessment purposes when evidence of a recent sale price is lacking (*see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d at 189; *Matter of General Elec. Co. v Town of Salina*, 69 NY2d at 731; *Matter of Lehigh Portland Cement Co. v Assessor of Town of Catskill*, 263 AD2d 558, 560-561 [1999]). The use of the comparable sales method is not mandated, however (*see Matter of Norton Co. v Assessor of City of Watervliet*, 292 AD2d 672, 673-674 [2002]); rather, " '[t]he ultimate purpose of valuation . . . is to arrive at a fair and realistic value of the property involved . . . [, and] [a]ny fair and nondiscriminating method that will achieve that result is acceptable' " (*Matter of Saratoga Harness Racing v Williams*, 91 NY2d 639, 643 [1998], quoting *Matter of Allied Corp. v Town of Camillus*, 80 NY2d 351, 356 [1992]; *see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d at 189; *Matter of NYCO Mins. v Town of Lewis*, 296 AD2d at 749). We are nonetheless mindful that "even when alternative theories must be used, the courts have been cautious about applying the [RCNLD] method because it is most likely to result in overvaluation, given its tendency to ascribe too little weight to such factors as rising construction costs and diminishing value by functional obsolescence" (*Matter of Allied Corp. v Town of Camillus*, 80 NY2d at 356-357; *see Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d 192, 197 [1998]; *Matter of Saratoga Harness Racing v Williams*, 91 NY2d at 643-644; *Matter of Great Atl. & Pac. Tea Co. v Kiernan*, 42 NY2d 236, 242 [1977]). Use of this method

has therefore *generally* been limited to properties deemed "specialties" (*see Matter of Saratoga Harness Racing v Williams*, 91 NY2d at 644, 646; *Matter of Lehigh Portland Cement Co. v Assessor of Town of Catskill*, 263 AD2d at 560) and, in any event, may be used " 'only in those limited instances in which no other method of valuation will yield a legally and economically realistic value for the property' " (*Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d at 197, quoting *Matter of Great Atl. & Pac. Tea Co. v Kiernan*, 42 NY2d at 242).

In accordance with the foregoing, this Court has thus deemed the use of the RCNLD method to be "at best, suspect" when there is data available to support a sales comparison approach (*Matter of Blue Circle v Schermerhorn*, 235 AD2d 771, 773 [1997]; *accord Matter of Lehigh Portland Cement Co. v Assessor of Town of Catskill*, 263 AD2d at 561). However, we have countenanced the use of the RCNLD method even for properties that are not specialties if there is insufficient market information, other methods have been rejected as unreliable and Supreme Court has taken appropriate cautionary measures to avoid overvaluing the property (*see Matter of Erie Blvd. Hydropower, L.P. v Town of Ephratah Bd. of Assessors*, 2003 NY Slip Op 50888[U] [2003], *affd* 9 AD3d 540, 542-544 [2004]). Significantly, despite petitioner's reliance upon *Matter of Lehigh Portland Cement Co. v Assessor of Town of Catskill (supra)*, that case does not hold to the contrary. In addition, we note that it remains within the sound discretion of the trial court to determine whether there is a market from which comparable sales may be selected (*see Matter of General Elec. Co. v Town of Salina*, 69 NY2d at 731), and we have generally endorsed the use of other methods where purported comparable sales are rejected as insufficiently similar or the property at issue is "unique" (*Matter of Gordon v Town of Esopus*, 296 AD2d 812, 813 [2002]; *see Matter of NYCO Mins. v Town of Lewis*, 296 AD2d at 750).

Here, at first glance, the comparable sales offered by petitioner's appraiser, Coyle, appear similar to the subject property. As petitioner asserts, the comparable properties were all multibuilding complexes originally constructed for heavy manufacturing, with associated office, warehouse, security and ancillary buildings, shipping and receiving facilities, storage areas and electric power substations. A further review of the record, however, supports Supreme Court's finding that the sales are not comparable to the subject property.

As noted by Supreme Court, six of the eight purportedly com-

parable sales used by Coyle were either previously converted to multi-tenanted facilities or were proposed to be converted at the time of sale. While there is industrial use at portions of some of these properties, the six properties are also used for warehousing, professional and medical offices, light industrial, packaging, assembly, retail, and restaurant purposes; one was sold pursuant to a redevelopment plan that included 650 residential units, as well. Nevertheless, Coyle and a commercial real estate broker who testified on petitioner's behalf acknowledged that there was no plan developed for converting the subject property to multiple occupancy, and that such conversion would require substantial capital expenditures that could exceed the purchase price of the property, render any such project economically infeasible and extend the marketing period for up to a decade. The remaining two sales involved (1) a transfer of space that had been excepted from the sale of a larger complex and that the purchaser—which had previously entered into "an operating arrangement" to run a division of the seller—was already occupying, and (2) a transaction that took place in the context of the sale of a larger business, and included a 10-year leaseback guarantee, substantial incentive payments from the state and a 10-year tax exemption.

In light of Coyle's failure to make adjustment for these additional factors and inasmuch as " '[t]he valuation of [the] property is determined by its state as of the taxable date, and may not be assessed on the basis of some future contemplated use,' " we conclude that Supreme Court did not err in finding that these properties were not sufficiently similar to the subject property to serve as a guide to market value (*Matter of Ross v Town of Santa Clara*, 266 AD2d 678, 680 [1999], quoting *Matter of General Elec. Co. v Macejka*, 117 AD2d 896, 897 [1986]; *see Matter of Stillwell Equip. Corp. v Assessors for Town of Greenburgh*, 251 AD2d 672, 672 [1998]; *Matter of Stonegate Family Holdings v Board of Assessors of Town of Long Lake*, 222 AD2d 997, 998 [1995], *lv denied* 92 NY2d 817 [1998]; *Matter of General Motors Corp. Cent. Foundry Div. v Assessor of Town of Massena*, 146 AD2d 851, 851-852 [1989], *lv denied* 74 NY2d 604 [1989]; *Matter of Xerox Corp. v Ross*, 71 AD2d 84, 86-89 [1979], *lv denied* 49 NY2d 702 [1980]; *cf. Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d at 189). Furthermore, given the lack of evidence of comparable sales and in light of the parties' agreement that the income approach was wholly inappropriate to value the facility, Supreme Court properly elected to use the sole remaining accepted method for valuing the property—the RCNLD approach (*see Matter of Erie Blvd. Hydropower, L.P. v Town of Ephratah Bd. of Assessors*, 9 AD3d

at 542-544; *see also Matter of NYCO Mins. v Town of Lewis*, 296 AD2d at 750). That is, even assuming without deciding that the subject property was not a specialty, as Supreme Court found, " 'no other method of valuation will yield a legally and economically realistic value for the property' " (*Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d at 197, quoting *Matter of Great Atl. & Pac. Tea Co. v Kiernan*, 42 NY2d at 242) and, thus, Supreme Court did not err in applying the RCNLD method to this unique property under the circumstances presented herein (*see Matter of Erie Blvd. Hydropower, L.P. v Town of Ephratah Bd. of Assessors*, 9 AD3d at 544).

In our view, Supreme Court additionally gave appropriate consideration to the tendency of the RCNLD approach to result in overvaluation by ascribing too little weight to factors such as rising construction costs and obsolescence (*see generally Matter of Consolidated Edison Co. of N.Y., Inc. v City of New York*, 8 NY3d at 596; *Matter of Saratoga Harness Racing v Williams*, 91 NY2d at 643-644; *Matter of Allied Corp. v Town of Camillus*, 80 NY2d at 356-357). Specifically, the court concluded that petitioner met its burden of demonstrating that the depreciation figure used by the town respondents was too low, and properly adopted instead the calculations for reproduction cost new to which the parties stipulated, and relied upon the effective physical and economic age estimates provided by petitioner in selecting an appropriate depreciation figure (*see Matter of Erie Blvd. Hydropower, L.P. v Town of Ephratah Bd. of Assessors*, 9 AD3d at 544).[4] Contrary to the town respondents' argument on their cross appeal, Supreme Court did not abuse its discretion in either determining that petitioner's appraiser was qualified to provide a depreciation estimate or in resolving the difference in expert opinion in this regard in favor of petitioner (*see Matter of City of Troy v Town of Pittstown*, 306 AD2d at 721; *cf. Matter of Tennessee Gas Pipeline Co. v Town of Sharon Bd. of Assessors*, 298 AD2d 758, 759-760 [2002], *lv denied* 99 NY2d 506 [2003]). In short, inasmuch as Supreme Court gave appropriate weight to the evidence presented by the parties and

---

4. To the extent that petitioner claims that it did not stipulate to the accuracy of these calculations, its argument is flatly belied by the record and, contrary to its further contention, Supreme Court did not interpret the stipulation to the calculations as a concession by petitioner that the RCNLD approach was the correct methodology by which to value the subject property. Coyle estimated the composite weighted physical age of the improvements on petitioner's property to be 54 years, and opined that due to improvements and capital expenditures, the effective physical age was 44 years; he estimated the effective economic age of the improvements to be 45 years out of a total economic life of 55 years.

it cannot be said that the court's finding is based upon an erroneous theory of law, we will defer to the court's determination of value and not disturb that decision upon this appeal.

The parties' remaining contentions are either not properly before us or, after consideration, have been found to be lacking in merit.

Cardona, P.J., Lahtinen, Kane and Kavanagh, JJ., concur. Ordered that the judgment is affirmed, without costs.