[931 NYS2d 623]

In the Matter of SHARI SEIDEL et al., Respondents, v BOARD OF
ASSESSORS, COUNTY OF NASSAU, et al., Appellants.

Second Department, October 4, 2011

APPEARANCES OF COUNSEL

*John Ciampoli, County Attorney*, Mineola (*Gerald R. Podlesak* of counsel), for appellants.

*Rosenfeld & Maidenbaum*, Cedarhurst (*Mark H. Miller* of counsel), for respondents.

**OPINION OF THE COURT**

HALL, J.

The principal issue raised on this appeal is whether Nassau County may consider improvements made to real property after the taxable status date in assessing property values for the particular tax year to which the taxable status date applies. Stated differently, the issue is whether Nassau County can use a fluctuating taxable status date based on an improvement which has been made to real property.

### Factual and Procedural Background

The petitioners are the owners of single-family, owner-occupied residences located on Green Place in Woodmere, Nassau County. Each of the petitioners had improvements made to their respective homes after January 2, 2007, but before Janu-

ary 2, 2008. The improvements increased the square footage of the respective homes and, consequently, increased their market value and real property tax.

The taxable status date for the 2008/2009 tax year was January 2, 2007, and, therefore, the improvements were made after the taxable status date. Nonetheless, the Board of Assessors, County of Nassau, in assessing the tax status of the respective properties for the 2008/2009 tax year, made nunc pro tunc or retroactive assessments of the properties using the condition of the properties as improved after the taxable status date. Thus, the petitioner Shari Seidel's home, which was a 2,765 square-foot cape home on the taxable status date, was assessed as if, on that date, it was a 4,320 square-foot colonial home. The home of the petitioners Harvey Kaufman and Rise Kaufman, which had been a 1,963 square-foot ranch home on the taxable status date, was assessed as if, on that date, it was a 4,446 square-foot colonial home. The home of the petitioners Marc Fries and Rachel Fries, which had been a 2,246 square-foot ranch home on the taxable status date, was assessed as if, on that date, it was a 4,763 square-foot expanded ranch home.

The petitioners each commenced a small claims assessment review (hereinafter SCAR) proceeding challenging the nunc pro tunc or retroactive assessment. The petitioners asserted that their properties should have been valued as they existed on the taxable status date, i.e., January 2, 2007, and not based on the improvements made thereafter. They submitted evidence of the value of neighboring properties similar to their homes, or "comparables," as they existed on the taxable status date. Nassau County took the position that the petitioners' properties should be valued with the new improvements, as if those improvements had been completed before the taxable status date, and submitted evidence of the value of comparable properties with the improvements.

The SCAR hearing officer issued three decisions, one for each property, which were virtually identical. The SCAR hearing officer, inter alia, found that he lacked the jurisdiction to rule on the petitioners' contention that the assessments were illegal. Specifically, the SCAR hearing officer found that his jurisdiction in the SCAR proceedings was limited to whether the challenged assessments were unequal or excessive. The SCAR hearing officer noted that, in contrast, the Supreme Court had broader jurisdiction and could also consider challenges to assessments on the ground that they were unlawful or based on a property be-

ing misclassified. Thus, the SCAR hearing officer took no view as to the legality of the nunc pro tunc or retroactive assessments, and disregarded it as an issue in the case.

Otherwise, the SCAR hearing officer found that the petitioners did not provide "comparables that bear on the January 2, 2007 house as recognized by" the County and, thus, presented "no relevant evidence." In effect, the SCAR hearing officer found that the condition of the three properties had to be considered as improved even though those improvements occurred after the taxable status date.

The petitioners then commenced the instant proceeding pursuant to CPLR article 78 in the Supreme Court against the Board of Assessors and the Assessment Review Commission of the County of Nassau (hereinafter together the County). The County, in its answer, noted that the Board of Assessors had been dissolved in 2009, and that the appropriate party was the Assessor of the County of Nassau or the Assessment Department of the County of Nassau. However, the County did not object to the proceeding on jurisdictional grounds, and appeared in the proceeding.

The petitioners contended that the SCAR hearing officer acted arbitrarily and capriciously by failing to consider the evidence they presented regarding the condition of their properties on the taxable status date, i.e., January 2, 2007. The County, in response, argued that it adhered to Nassau County Administrative Code (hereinafter Code) § 6-24.1 in assessing the properties. The County, inter alia, maintained that Code § 6-24.1 authorized a new assessment for each of the three properties to reflect the new construction and improvements, which were made after the taxable status date of January 2, 2007, for the tax year 2008/2009. According to the County, the purpose of Code § 6-24.1 was to reflect changes in assessment values due to new construction and/or improvements for a given tax year after the taxable status date.

The Supreme Court granted the petition, annulled the determinations of the SCAR hearing officer, and remitted the matters for a de novo review of the applications and a new determination thereafter before a different SCAR hearing officer, with the direction that the properties be valued as of January 2, 2007 (2010 NY Slip Op 33741[U] [2010]). The Supreme Court reasoned that real property was to be assessed for tax purposes according to its condition on the taxable status date, and the taxable status date relevant to the subject properties was Janu-

ary 2, 2007. The Supreme Court noted that while the petitioners proffered evidence as to the respective properties for the taxable status date of January 2, 2007, the evidence provided by the County was in the form of comparable sales, which reflected the values of the properties as of January 2, 2008.

Thus, the Supreme Court found that the evidence produced by the County did not provide a rational basis for the SCAR hearing officer's determination. This appeal by the County ensued.

## Analysis

Before delving into the issue of statutory construction which is dispositive of this appeal, some background information regarding the tax assessment system in Nassau County is helpful in understanding the context of this case. As recognized by the New York State Division of the Budget, Nassau County has "notoriously flawed assessment and assessment review systems" (Budget Rep on Bills, Bill Jacket, L 2002, ch 401, at 4). Indeed, Nassau County has a history of financing debt in order to pay real property tax refunds (*id.*) By 2002, Nassau County had $1.1 billion in tax certiorari debt, which led to the establishment of the Nassau County Interim Finance Authority, a seven-member nonpartisan board designed to oversee Nassau County's finances (*id.*) Since 1995, Nassau County has borrowed $149.5 million annually to finance these tax refund payments (*see* Letter from Counsel to the Comptroller to Counsel to the Governor, Aug. 12, 2002, Bill Jacket, L 2002, ch 401).

The primary reason for this predicament was that the Nassau County Assessment Review Commission (hereinafter the Commission) was given only 10 days, from March 1 to March 10, to determine homeowner grievances before the final tax assessment roll became due on April 1 of that same year. For instance, Nassau County's tentative assessment roll was published on January 2, taxpayers had until March 1 to file grievances, the final determinations on those grievances were due on March 10, and the final assessment roll was issued on April 1. As a result of the short time period in which to resolve grievances, taxpayers would overpay taxes and receive a refund years later, when the grievances were finally resolved (*see* Budget Rep on Bills, Bill Jacket, L 2002, ch 401).

In order to remedy this problem, the State Legislature, in 2002, amended the Real Property Tax Law and the Code to, among other things, give the Commission one year to resolve

assessment grievances before an assessment roll is made final (*see* Letter from Counsel to the Comptroller to Counsel to the Governor, Aug. 12, 2002, Bill Jacket, L 2002, ch 401). Pursuant to the amendments, the deadlines for Nassau County's tentative assessment roll and the filing of grievances continued to be January 2 and March 1, respectively, but the due date for the final assessment roll was moved to April 1 of the year following the issuance of the tentative assessment roll (*see* Budget Rep on Bills, Bill Jacket, L 2002, ch 401). Thus, for example, for the 2008/2009 tax year, the tentative assessment roll would be published on January 2, 2007 (the taxable status date) (*see* Code §§ 6-2.1, 6-9.0), taxpayer grievances had to be filed by March 1, 2007, the Commission would have until March 10, 2008, to make determinations on the grievances, and the final assessment roll would be published on April 1, 2008 (*see* Code § 6-13.0). As a result, the Commission would have sufficient time to resolve assessment grievances before the assessment roll becomes final. This allows taxpayers with legitimate grievances to pay only the correct tax amount, instead of overpaying and waiting years for a refund. Moreover, Nassau County benefits from a more efficient and cost-effective tax assessment system (*id.*)

Code § 6-24.1 was also enacted as part of the 2002 amendments. That section provides, in relevant part:

"§ 6-24.1 Determination of new assessment upon change in taxable status or construction or destruction of improvements.

"a. When the tentative assessment roll fails to reflect the filing of an application for a new exemption, a change in eligibility for exemption, or the construction or destruction of improvements, which occurred after the taxable status date applicable to such roll, but on or before the taxable status date applicable to the assessment roll for the following year, the Board of Assessors shall determine a new assessment pursuant to the provisions of this section . . .

"d. Notwithstanding the provisions of section 6-2.1 of this title, upon a change in eligibility for exemption or the construction or destruction of improvements, the Board of assessors shall determine a new assessed valuation and taxable assessed valuation and shall, if appropriate, reclassify the property pursuant to section 1802 of the Real Property Tax Law.

"1. Such new assessment shall be based on the value, use and condition of the property as of the second day of January occurring on or after the date of such change in eligibility for exemption, construction or destruction . . .

"e. When the Board of Assessors determines a new assessment pursuant to this section it shall be entered on the *next following tentative assessment roll*, except that where the new assessment is less than the original assessment but is not determined in sufficient time for entry on the next tentative assessment roll, it may be entered on the final roll. In the case of an increased assessment entered on the tentative assessment roll, the Board of Assessors shall send a notice to the owner in the manner provided by section 510 of the Real Property Tax Law" (Code § 6-24.1 [a], [d] [1]; [e] [emphasis added]).

Code § 6-2.1 (a) provides that "the Board of Assessors shall determine the taxable status and classification of all real property for state, county, town, special and school district taxes for the second succeeding fiscal year according to its condition, ownership and use as of the second day of January in each year." Thus, as mentioned earlier, January 2, 2007 is the taxable status date for the 2008/2009 tax year.

"[W]hen real property is assessed for tax purposes '[t]he valuation of [the] property is determined by its state as of the taxable date, and may not be assessed on the basis of some future contemplated use' " (*Matter of Ross v Town of Santa Clara*, 266 AD2d 678, 680 [1999], quoting *Matter of General Elec. Co. v Macejka*, 117 AD2d 896, 897 [1986]; *see Matter of General Elec. Co. v Assessor of Town of Rotterdam*, 54 AD3d 469, 474 [2008]; *Matter of Alexander's Dept. Store of Val. Stream v Board of Assessors*, 227 AD2d 549, 549 [1996]). Therefore, the valuation of the petitioners' properties must be assessed for tax purposes on January 2, 2007, the taxable status date, for the 2008/2009 tax year. The issue, however, is whether Code § 6-24.1 authorizes the County to consider improvements made to the petitioners' properties after January 2, 2007, and assess the properties as if those improvements had been completed by January 2, 2007.

The County argues that Code § 6-24.1 allows the County Assessor to change the valuation of property for tax purposes where, as here, there has been construction enhancing the value

of property between taxable status dates. The County asserts that this process is unique to Nassau County and does not exist in other counties in the State of New York. Furthermore, the County relies on a memorandum from the New York State Office of Real Property Services, which was made part of the Bill Jacket when Code § 6-24.1 was enacted in 2002.

The petitioners contend that Code § 6-24.1 does not change the taxable status date even if construction is performed on the property between taxable status dates. The petitioners maintain that, in the event construction or improvements occur between taxable status dates, subsection (e) of Code § 6-24.1 provides that the new assessment shall be entered on the next following tentative assessment roll, which means, in the context of this case, the 2009/2010 tentative assessment roll. According to the petitioners, the only exception to the rule that property must be valued for tax purposes as it exists on the taxable status date is where the new assessment results in a reduction in property value.

We begin our analysis with the language of Code § 6-24.1 (*see Matter of Orens v Novello*, 99 NY2d 180, 185 [2002]), as the text of that Code provision is "the 'clearest indicator of legislative intent' " (*Ragucci v Professional Constr. Servs.*, 25 AD3d 43, 47 [2005], quoting *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]; *see Maraia v Orange Regional Med. Ctr.*, 63 AD3d 1113, 1116 [2009]; *Janssen v Incorporated Vil. of Rockville Ctr.*, 59 AD3d 15, 28 [2008]).

Subsection (a) of Code § 6-24.1 provides that

"[w]hen the tentative assessment roll fails to reflect . . . the construction or destruction of improvements, which occurred after the taxable status date applicable to such roll, but on or before the taxable status date applicable to the assessment roll for the following year, the Board of Assessors shall determine a new assessment pursuant to the provisions of this section."

Subsection (e) provides the timing of when this "new assessment" is to occur. Code § 6-24.1 (e) states that "[w]hen the Board of Assessors determines a new assessment pursuant to this section it shall be entered on the *next* following tentative assessment roll" (emphasis added). "Next" means next. Thus, for example, if the construction occurred in June 2007 (which is between the taxable status dates of January 2, 2007, and January 2, 2008), the Board of Assessors shall make a new assess-

ment and it is to be entered on the "next" following tentative assessment roll, which would be the tentative assessment roll for the 2009/2010 tax year, and which would be filed by January 2, 2008 (*see* Code § 6-9.0). In this case, therefore, the new assessments for the construction and improvements to the petitioners' properties are to be entered on the tentative assessment roll for the 2009/2010 tax year, not the final assessment roll for the 2008/2009 tax year.

This interpretation is further supported by the language of subsection (d). Code § 6-24.1 (d) (1) provides that the new assessment "shall be based on the value, use and condition of the property as of the second day of January occurring *on or after* the date of such . . . construction or destruction" (emphasis added). Consequently, if the construction occurred in June 2007, then the new assessment would be based on the property's value, use, and condition as it exists on January 2, 2008, which is the second day of January occurring on or after the date of such construction.

We further note that Code § 6-24.1 treats new assessments that are less than the original assessment differently than new assessments that are greater than the original assessment. Subsection (e) of Code § 6-24.1 states that "where the new assessment is less than the original assessment but is not determined in sufficient time for entry on the next tentative assessment roll, it may be entered on the final roll." A similar exception was not created for new assessments that are greater than the original assessment, as is the case here.

The County's reliance on a memorandum authored by two attorneys from the State's Office of Real Property Services, which is attached to the Bill Jacket of the Laws of 2002, chapter 401, does not compel a different conclusion. The memorandum notes that Bill section seven of S.7698 would enact, and Bill section two of S.7774 would amend, Code § 6-24.1 (*see* Mem from Stephen J. Harrison and Joseph K. Gerberg, Bill Jacket, L 2002, ch 401, at 11). The memorandum explained that the bills would provide a procedure for the determination of a new assessment upon a change in taxable status or the construction or destruction of an improvement (*id.*). In addition, the memorandum stated,

> "[t]he clear intent is to authorize changes that occur between taxable status date and the preparation of the assessment roll based upon that now to be

much earlier date. The idea of recognizing changes that occur after taxable status date is without precedent and may be difficult to administer. The provision that allows the Commission to consider evidence that there has been 'a change of condition occurring after the taxable status date' is quite broad, and if properties which have experienced a mid-year change are valued using a different valuation date than other properties, as the bill seems to envision, questions of equity may arise" (*id.* at 11).

"As a general rule, unambiguous language of a statute is alone determinative" (*Riley v County of Broome*, 95 NY2d 455, 463 [2000]). "Nevertheless, the legislative history of an enactment may also be relevant and 'is not to be ignored, even if words be clear' " (*id.*, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 124, Comment, at 252). However, the legislative history is simply an aid "to ascertain the intent of the Legislature, and the meaning of a statute is primarily to be determined from the language used" (McKinney's Cons Laws of NY, Book 1, Statutes § 124, Comment, at 256).

While this Court may take judicial notice of the Bill Jacket even though it is not part of the record (*see State of New York v Green*, 96 NY2d 403, 408 n 2 [2001]), the memorandum contained therein does not alter our plain meaning interpretation of Code § 6-24.1. Indeed, the memorandum does not aid in ascertaining the intent of the Legislature. The two attorneys who authored the memorandum seemed less than sure about the meaning of Code § 6-24.1. For instance, at one point, the attorneys stated that the intent of the Legislature was clear, but at another point, stated that the bill seemed to envision using different valuation dates for properties that had undergone construction between taxable status dates. Moreover, the interpretation offered by the two attorneys conflicts with the plain language of Code § 6-24.1 (e). The memorandum does not discuss section 6-24.1 (e) or that subsection's direction that the new assessment "shall be entered on the next following tentative assessment roll." Therefore, the interpretation of Code § 6-24.1 contained in the memorandum in the Bill Jacket cannot trump that provision's plain meaning.

To summarize, we conclude that Code § 6-24.1 does not give Nassau County the authority to consider evidence of an improvement occurring after the taxable status date, i.e., January 2, 2007, and then apply it to that tax year, i.e., the 2008/

2009 tax year. Instead, Code § 6-24.1 (e) requires that the new assessment be applied to the next following tentative assessment roll, corresponding to the 2009/2010 tax year.

Since the SCAR hearing officer failed to consider evidence of the values of the petitioners' properties as of the taxable status date of January 2, 2007, his determinations lacked a rational basis, and were arbitrary and capricious (*see Matter of Sass v Town of Brookhaven*, 73 AD3d 785, 788 [2010]). Accordingly, the Supreme Court properly granted the petition, annulled the three determinations of the SCAR hearing officer, and remitted the matters to a different SCAR hearing officer for a de novo review of the applications and new determinations thereafter, with the direction that the properties be valued as of January 2, 2007.

In light of our determination, we need not reach the petitioners' remaining contentions.

Accordingly, the judgment is affirmed.

ANGIOLILLO, J.P., DICKERSON and ROMAN, JJ., concur.

Ordered that the judgment is affirmed, with costs.