■ In the Matter of ADIRONDACK MOUNTAIN RESERVE, Respondent, v BOARD OF ASSESSORS OF THE TOWN OF NORTH HUDSON et al., Respondents, and TOWN OF KEENE et al., Appellants.
[966 NYS2d 532]—

Spain, J. Appeal from a judgment and order of the Supreme Court (Muller, J.), entered October 28, 2011 in Essex County, which, among other things, partially granted petitioner's applications, in a consolidated proceeding pursuant to RPTL article 7, to reduce the 2006, 2007 and 2008 tax assessments on certain real property owned by petitioner.

Petitioner owns 7,328 mostly contiguous acres of land on 19 tax map parcels located within the Adirondack Park in the adjoining Towns of Keene and North Hudson in Essex County. As a corporation created in 1887 for the purpose of conserving the region's natural resources, petitioner operates the Ausable Club, a private club whose members use the improvements on the property, which include a historic lodge, a golf course, tennis courts, a swimming pool and other facilities, and some of whom own or lease seasonal homes or cottages on the mostly forested property (*see Matter of Adirondack Mtn. Reserve v Board of Assessors of Town of N. Hudson*, 99 AD2d 600, 600 [1984]). Petitioner commenced six proceedings pursuant to RPTL article 7 challenging the property tax assessments levied on three of the parcels by respondent Town of North Hudson and respondent Town of Keene for the years 2006, 2007 and 2008, alleging that the land values (without improvements) were excessive. A nonjury trial was held at which the parties submitted extensive real estate appraisal reports into evidence and offered the testimony of their appraisers, who the parties stipulated were qualified. Supreme Court determined that two of the parcels[1] —parcel one located in the Town of Keene and parcel two located in the Town of North Hudson—had been overvalued, while the third challenged parcel, located in the Town of Keene, had been properly valued. Respondents Town of Keene, Chair of the Board of Assessors of the Town of Keene, Keene Central

1. Parcel one is tax map parcel #83-1-1.100 and parcel two is tax map parcel #92-3-7.100.

School District, Town of North Hudson, Chair of the North Hudson Board of Assessors and Schroon Lake Central School District (hereinafter collectively referred to as respondents) appeal, challenging the court's reduction in the valuation of parcels one and two.[2]

As reflected in the chart below, for the relevant tax years, the land value of parcel one, a 4,971.51-acre parcel, was assessed at taxable values of $14,164,300 (2006), $15,580,700 (2007) and $17,917,800 (2008). After considering the reports and testimony of petitioner's appraiser, Donald Fisher, and respondents' appraiser, Paul Wicker, Supreme Court determined that parcel one had been overvalued and that its tax value was $7,666,068 for each of the disputed tax years. With regard to the land value of parcel two, a much smaller parcel of 413.6 acres, it was assessed at $2,314,000 (2006), $2,432,000 (2007) and $2,432,000 (2008), and the court found that it had been overvalued and that its value was $637,771 for all three tax years. As is evident, the court's tailored valuations were significantly lower than the town assessments and Wicker appraisals, but higher than the Fisher appraisals. We note also that Wicker, respondents' appraiser, assigned a valuation to the larger parcel, parcel one, that was significantly higher than the town's own assessment.

Parcel 1 (4,971.51 Acres)

| Tax Year | Town of Keene | Fisher (Pet.) | Wicker (Town) | Supreme Court |
|---|---|---|---|---|
| 2006 | $14,164,300 | $4,465,500 | $20,119,701 | $7,666,068 |
| 2007 | $15,580,700 | $4,588,000 | $20,119,701 | $7,666,068 |
| 2008 | $17,917,800 | $4,588,000 | $20,119,701 | $7,666,068 |

Parcel 2 (413.6 Acres)

| Tax Year | Town of N. Hudson | Fisher (Pet.) | Wicker (Town) | Supreme Court |
|---|---|---|---|---|
| 2006 | $2,314,000 | $322,000 | $1,673,839 | $637,771 |
| 2007 | $2,432,000 | $333,000 | $1,673,839 | $637,771 |
| 2008 | $2,432,000 | $333,000 | $1,673,839 | $637,771 |

2. By order of consolidation entered August 28, 2009, Supreme Court, upon consent of all parties to the six proceedings, consolidated them into one proceeding (see CPLR 602 [a]), which was appropriate given the common questions of law and fact. While the consolidated proceeding culminated in one judgment and order, Supreme Court failed to give the consolidated proceeding one caption and, accordingly, this Court has done so (see Siegel, NY Prac § 127 at 227 [5th ed 2011]). As a result, all respondents are parties to one proceeding and had standing to appeal from the resulting judgment and order. However, as respondents Board of Assessors of the Town of North Hudson and the Board of Assessment Review of the Town of North Hudson neither filed a notice of appeal nor submitted a brief, they are not parties to this appeal.

While "a locality's tax assessment is presumptively valid," a property owner "may overcome that presumption by bringing forth substantial evidence that its property has been overvalued" (*Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d 192, 196 [1998]). Substantial evidence is a minimal threshold standard that simply "requires that [a] petitioner demonstrate the existence of a valid and credible dispute regarding valuation" (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d 179, 188 [1998]), which may be achieved by submission of "a detailed competent appraisal, based on standard, accepted appraisal techniques and prepared by a qualified appraiser" (*Matter of Friar Tuck Inn of Catskills v Town of Catskill*, 2 AD3d 1089, 1090 [2003]; *accord Matter of OCG L.P. v Board of Assessment Review of the Town of Owego*, 79 AD3d 1224, 1225 [2010]; *Matter of United Parcel Serv. v Assessor of Town of Colonie*, 42 AD3d 835, 837 [2007]). Respondents' principal contention on appeal is that Fisher's appraisal was not competent or sufficient to overcome the presumption, in that he did not appraise petitioner's entire property (i.e., all 19 tax map parcels) as a whole but, rather, appraised it in components based upon each parcel's current characteristics and usage, assigning different per acre values to the land in each relevant component.

Fisher, like Wicker, utilized the comparable sales valuation method, a well accepted methodology where, as here, there was no recent sale of the subject property (*see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d at 189). Fisher considered the divergent mix of uses and features on the 19 parcels, and concluded that there were no recent comparable sales of large tracts of land with a similar combination of characteristics and current uses in the Adirondack Park or, indeed, in the northeast, to utilize so as to value petitioner's whole property as one parcel. Notably, Wicker similarly was not able to identify any comparable sales with all of the significant attributes of petitioner's whole parcel. Fisher's appraisal report, as required, contained "a statement of the method of appraisal relied on and the conclusions as to value reached by [Fisher], together with the facts, figures and calculations by which the conclusions were reached" (22 NYCRR 202.59 [g] [2]; *see Matter of OCG L.P. v Board of Assessment Review of the Town of Owego*, 79 AD3d at 1225). As such, it was competent.

Fisher determined that petitioner's 7,328-acre property consists of three different segmented land uses with distinguishable features: (1) the 370-acre "campus" property consisting of 14 tax map parcels that contain petitioner's lodge, cot-

tages, the golf course and other recreational facilities all accessible by public road; (2) the 6,948-acre "wilderness" property, mostly remote forested, steeply sloped land accessible by foot with few utilities, with seasonal cabins (14) used for camping and hiking; and (3) the 10.7-acre "cottage" property containing seasonal cottages (8) accessible by a private road with utilities available through the adjacent campus property. Fisher characterized the campus property as a combination of residential, commercial and recreational use as a private membership club with development potential and both year round and seasonal use; the wilderness property—where parcels one and two are located—as primarily recreational, with seasonal camping and hiking; and the cottage parcel as seasonal residential cabin/cottage use. Fisher divided the whole property into these components, based on their features and current uses, then compared them to similar properties transferred in that market area and calculated the land values per acre in those components. He opined that the five contiguous tax parcels within the wilderness property and the cottage property, which he collectively referred to as the "reserve," constitute a distinct and separate economic unit. Further, these reserve parcels are also distinguishable from the rest of the property in that they are subject to a conservation easement[3] that petitioner granted to the state in 1978, allowing public access to the trails and dirt/gravel roadways within the reserve property and prohibiting or restricting certain activities including real estate development or commercial use, building construction, mining, hunting, logging and farming (see Matter of Adirondack Mtn. Reserve v Board of Assessors of Town of N. Hudson, 99 AD2d at 600). The reserve property contains Lower Ausable Lake (127 acres), Upper Ausable Lake (34 acres), the east branch of the Ausable River, the Marcy Swamp, waterfalls, scenic mountain views, and public and private hiking trails, but no frontage on any public road. It is accessible through the campus property.

Fisher meticulously documented what he viewed to be the distinguishing and significant features of the campus property versus the reserve property, which he testified were "completely different types of property." He extensively catalogued their characteristics pertaining to: current use, access, size, topography, improvements and buildings, utilities, ownership rights and encumbrances including the conservation easement, and marketability. Fisher testified that this "larger parcel"

---

**3.** As a consequence of the conservation easement, the state pays, pursuant to an allocation factor, 71% of the tax bill on the reserve property, while petitioner pays the remaining 29% (see RPTL 543).

methodology of dividing property into its components based on differing uses and characteristics, and valuing each component separately as part of the whole for purposes of real estate valuation, is accepted and widely applied in the relevant expert community (which Supreme Court was entitled to credit), where, as here, there are no recent sales of the subject property nor sales of property with a comparable combination of uses and attributes. Notably, we have recognized the legitimacy of this comparable sales, separate component approach in other appropriate circumstances (*see Matter of Corvetti v Winchell*, 75 AD3d 1013, 1014-1015 [2010], *lv denied* 16 NY3d 701 [2011]; *see e.g. Matter of General Elec. Co. v Town of Salina*, 69 NY2d 730, 732 [1986]; *Matter of City of Troy v Town of Pittstown*, 306 AD2d 718, 723 [2003], *lv denied* 1 NY3d 505 [2004] [2003]).

Fisher's analysis, as required, "assessed [petitioner's property] at market value" and "there is no fixed method for determining that value"; mindful that "[t]he ultimate purpose of valuation . . . is to arrive at a fair and realistic value of the property," it is well settled that "[a]ny fair and nondiscriminating method that will achieve that result is acceptable" (*Matter of Allied Corp. v Town of Camillus*, 80 NY2d 351, 356 [1992]). Moreover, the determination whether to value a property "as a single entity or as an aggregate of several subdivided entities is essentially a factual determination" (*Matter of General Elec. Co. v Town of Salina*, 69 NY2d at 732). As compelled, Fisher's market value approach focused on the property's current use rather than its "highest and best use" (*Matter of Gordon v Town of Esopus*, 15 NY3d 84, 87 [2010]). Given the circumstances of this particular property, conceded by all to be unique, and the inability of either appraiser to identify any market sales of similar property with the same combination of uses and features as the entire combined property, we have no reason to conclude that Supreme Court erred or abused its discretion in accepting and, in part, crediting Fisher's appraisal and testimony utilizing a comparable sales, separate component approach as the analysis that the court found "more appropriately values the [market values of the] parcels under review." Based upon the foregoing, we find that petitioner rebutted the presumption of validity of the disputed tax assessments, by presenting a detailed competent appraisal by a qualified appraiser, based upon accepted appraisal techniques, which constituted substantial evidence of overvaluation and presented a genuine dispute concerning valuation (*see Matter of Niagara Mohawk Power Corp. v Assessor of Town of Geddes*, 92 NY2d 192, 196 [1998]; *Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d at 188; *Matter of Corvetti v Winchell*, 75 AD3d at 1014; *Matter of Friar Tuck Inn of Catskills v Town of Catskill*, 2 AD3d at 1090).

Upon review of Supreme Court's determination that petitioner met its burden of establishing, by a preponderance of the evidence, that parcels one and two had been overvalued, we "weigh the entire record" (*Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d at 188) and "review the trial court's finding to determine whether it is supported by or against the weight of the evidence" (*Matter of Rite Aid of N.Y. No. 4928 v Assessor of Town of Colonie*, 58 AD3d 963, 964 [2009], *lv denied* 12 NY3d 709 [2009] [internal quotation marks and citations omitted]; *accord Matter of Corvetti v Winchell*, 75 AD3d at 1014). Valuation of assessed property presents the court with a factual question (*see Matter of Consolidated Edison Co. of N.Y., Inc. v City of New York*, 8 NY3d 591, 595-596 [2007]), and this Court will defer to the trial court's decision "unless such finding is based upon [an] erroneous theory of law or [an] erroneous ruling in the admission or exclusion of evidence, or unless it appears that the court . . . has failed to give to conflicting evidence the relative weight which it should have and thus has arrived at a value which is excessive or inadequate" (*Matter of General Elec. Co. v Assessor of Town of Rotterdam*, 54 AD3d 469, 472 [2008], *lv denied* 11 NY3d 711 [2008] [internal quotations marks and citation omitted]).

With respect to the comparable sales approach utilized by Fisher, he identified 63 sales dating back to 1995 of large Adirondack parcels (i.e., those with upwards of 1,000 acres or more) of mostly forested land containing significant water features, which he narrowed to 12 comparable sales that he determined to be the most similar to the reserve property based upon identified features, i.e., large lakes, timber, size, steep topography and limited access, and he explained his specific reasons for excluding the other properties. He charted those 12 sales, directly comparing them to the reserve property by evaluating their numerous attributes, including topography, sale date, scenic amenities, available utilities, market conditions, access, location, size, shape, zoning and the presence of open water, rivers, streams and wetlands. Fisher then made adjustments for significant differences as to each element based on the comparisons between the subject reserve property and each comparable sale, and calculated a comparable per acre sales range for each tax assessment year in dispute. Based upon the results of that adjustment process, he concluded that six of the sales were the most comparable and used them (minus one due to its sale date) and their comparable sales range to

calculate a per acre unit value for the reserve parcels.[4] He then calculated the total market value of the wilderness and cottage parcels for each year, which he allocated to each of the tax map parcels, including disputed parcels one and two, based on their per acre value. Finally, he adjusted the per acre unit values for each disputed tax parcel to reflect different locations and physical characteristics, arriving at the valuations of parcels one and two for each year, as noted above.

Wicker, in contrast, disagreed with Fisher's separate component approach, asserting that Fisher improperly appraised only a portion of the property. Wicker appraised all 19 of petitioner's tax map parcels as one whole single unit, which he opined reflected its ownership by petitioner as a single entity and the current and intertwined use by petitioner's members of the reserve parcels for recreation in conjunction with the campus property and facilities. With that approach, Wicker also utilized the comparable sales method to value the entire property, using sales with "some" of the subject parcel's attributes, such as its blend of improvements and large acreage, conceding he found none with all of its attributes. He testified that he achieved his valuations by further "break[ing] the property down into its next components, which would be the improvements separately, the forest acreage separately, and the improved cabin sites separately." He likewise made adjustments and allocations to the comparable sales based upon different attributes from petitioner's property; he calculated—as relevant here—a per acre land value (without improvements) for the entire property, and allocated that per acre land value ($4,047/acre) to the acreage in each tax parcel to arrive at a valuation for each of the two disputed parcels. While determining that Wicker's methodology was acceptable, Supreme Court found that his selected sales were "not very comparable properties" which "open[ed] a wide door of subjectivity for the appraiser to 'adjust.'"

In its comprehensive analysis, Supreme Court rejected Wicker's opinion that petitioner's property had to be appraised as a single, whole entity; found[5] that Fisher's report contained "better representative comparable sales"; agreed with Fisher on which were the two most notable comparable Adirondack

---

4. For 2007 and 2008, Fisher calculated the per acre unit value for the wilderness parcels, including parcels one and two, to be $900/acre, with a total value of $6.253 million. For 2006, the per acre unit value for the wilderness property was calculated to be $875/acre, with a total value of $6.08 million.

5. Supreme Court denied the parties' cross motions to dismiss the other party's appraisal report, indicating it took into consideration their respective criticisms in its valuation analysis.

Park sales with access similar to the reserve (the 2008 Follensby Pond sale [14,677 acres in Franklin County][6] and the 1998 Whitney Industries sale [14,700 acres in Hamilton County] to the state); and based its higher valuation of the disputed reserve parcels, in part, on the six comparable sales analyzed in Fisher's report. The court added a 2006 sale from the Nature Conservancy to the Tahwus Club (628.23 acres in Essex County), a club with a similar purpose (which had been included in Fisher's 12 comparables),[7] and then carefully considered and accepted Fisher's adjustments to those seven sales, but with certain specific exceptions.[8]

Supreme Court further concluded that Wicker's three Warren County comparable sales (out of five) were not sufficiently close or similar to consider in valuing petitioner's property, given their small sizes and proximity to Lake George and nearby population centers. The court considered Wicker's two remaining comparable sales, accepting Wicker's adjustments to and valuation of his fourth comparable sale (the 2004 Bunting Family sale [5,208.64 acres in Essex County], also part of Fisher's final six), and made numerous modifications to both parties' adjustments to the 2005 Hunt Lake Holdings sale (924.59 acres in Warren and Essex Counties), Wicker's fifth comparable sale (also one of Fisher's original 12). In considering the further adjustment to be made for the enhancement value of the hunting and fishing cabins on the wilderness property, the court found Wicker's comparable sales to be too dissimilar "due to the extreme difference" in accessibility to roads and utilities and their development potential. The court then added a 20% upward adjustment to its value of the reserve property to reflect the amenities available at the campus property. Contrary to respondents' contentions on appeal, the court's approach to valuing the adjacent amenities in its valuation of the reserve

6. The sale date for the Follensby Pond sale was just past the valuation date for the tax years in issue here and, thus, Supreme Court limited its weight and reliance thereon to being merely reflective of the overall market trend in Adirondack Park market value.

7. Fisher had opined that the Tahwus Club sale was above market value, like the Whitney Industries sale, due to the buyer being determined and willing to pay a premium for the property.

8. Supreme Court rejected the downward adjustments for the "premium" paid by the state, which Fisher and Wicker each applied to the Whitney Industries sale, finding instead that this sale was "very representative" of the per acre market price of the raw acreage in the reserve property, with an adjusted per acre value of $1,276. Both experts' reductions in value were based on the belief that the state had been overly pressured by environmental groups to make that purchase and prevent development thereon and, thus, paid above market value to secure it.

property was well-founded, supported by the record and not conceptually dissimilar to Wicker's whole property valuation approach, which took into consideration the current use and amenities available to the reserve property due to its use by members in conjunction with the campus facilities.

Based on the foregoing, Supreme Court calculated a per acre value for the reserve parcels ($1,542/acre) and a total market value. Weighing the record as a whole, we find that petitioner established by a preponderance of the evidence that parcels one and two were overvalued (*see Matter of FMC Corp. [Peroxygen Chems. Div.] v Unmack*, 92 NY2d at 188) and that deference to the court's painstaking factual determinations regarding valuation is appropriate in the absence of any error of law and in view of the weight of extensive credible evidence supporting its analysis (*see Matter of Consolidated Edison Co. of N.Y., Inc. v City of New York*, 8 NY3d at 595-596; *Matter of General Elec. Co. v Assessor of Town of Rotterdam*, 54 AD3d at 472). We discern no basis upon which to disturb the court's considered determination that Fisher's appraisal method and comparables with adjustments were more accurate, with certain specific exceptions, and reflected the reserve's market value, recognizing the court's competence to make its own adjustments to the parties' valuations, which are fully explained and justified in the record (*see Matter of Eckerd Corp. v Semon*, 35 AD3d 931, 933-935 [2006]). Thus, the court's determination is supported by the weight of the evidence.

We have considered respondents' remaining contentions and find them unpersuasive.

Mercure, J.P., McCarthy and Egan Jr., JJ., concur. Ordered that the judgment and order is affirmed, without costs.